**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LEONARD HOWARD, individually and on behalf of all others situated, | Case No. 1:14-cv-01183-BAH |
| Plaintiff, | Chief Judge Beryl A. Howell |
| v. | |
| LIQUIDITY SERVICES INC., WILLIAM P. ANGRICK III, and JAMES M. RALLO, | |
| Defendants. | |

**CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
**AND INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...........................................................................................ii

PRELIMINARY STATEMENT ..................................................................................... 1

HISTORY OF THE LITIGATION ................................................................................. 3

SETTLEMENT NEGOTIATIONS ................................................................................ 7

ARGUMENT .................................................................................................................. 7

I.      THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL .................. 7

        A.      The Standard for Preliminary Approval ................................................. 7

        B.      The Settlement Is Well Within the Range of Reasonableness............................ 9

        C.      There Are No Obvious Deficiencies or Reasons to Doubt the Settlement's
                Fairness ....................................................................................... 12

        D.      The Settlement Treats All Class Members Fairly and Does Not Improperly
                Grant Preferential Treatment to Class Representatives or any Segment of
                the Class...................................................................................... 14

        E.      The Settlement Does Not Excessively Compensate Class Counsel .................... 15

II.     THE PROPOSED NOTICE PLAN AND FORMS SHOULD BE APPROVED............. 16

III.    PROPOSED SCHEDULE OF EVENTS....................................................... 19

IV.     CONCLUSION................................................................................... 20

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Brown v. Wells Fargo Bank, N.A.*,
    869 F. Supp. 2d 51 (D.D.C. 2012) ........................................................................16

*Cobell v. Salazar*,
    679 F.3d 909 (D.C. Cir. 2012) ..............................................................................18

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006).................................................................................17

\* *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*,
    4 F. Supp. 3d 94 (D.D.C. 2013) ..........................................................9, 12, 16, 17

*Richardson v. L'Oreal USA, Inc.*,
    951 F. Supp. 2d 104 (D.D.C. 2013) .......................................................................8

\* *Trombley v. Nat'l City Bank*,
    759 F. Supp. 2d 20 (D.D.C. 2011) .............................................................. *passim*

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)...................................................................................17

**Statutes**

15 U.S.C. § 78u-4(a)(4) ..............................................................................................14

15 U.S.C. §78u-4(a)(7)(A)-(F).....................................................................................17

**Rules**

Fed. R. Civ. P. 23 .............................................................................................1, 2, 18

Fed. R. Civ. P. 23(c)(2).............................................................................................16

**Other Authority**

Newberg on Class Actions (5th ed. 2015) ................................................................7, 8

Class Representatives, Caisse de dépôt et placement du Québec ("Caisse") and the City of Newport News Employees' Retirement Fund ("NNERF") (collectively, the "Lead Plaintiffs" or "Class Representatives"), on behalf of themselves and all members of the certified Class, respectfully submit this unopposed motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for entry of the Parties' agreed-upon Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement ("Preliminary Approval Order"). The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement, dated as of June 19, 2018, entered into by all parties (the "Stipulation").[1]

## PRELIMINARY STATEMENT

The Parties have reached a proposed settlement of this securities class action (the "Action") for a total of $17,000,000 in cash (the "Settlement") that, if approved by the Court, will resolve all claims asserted, or that could have been asserted, against Defendants in the Action. Class Representatives request that the Court preliminarily approve the proposed Settlement. As explained herein, Class Representatives respectfully submit that the Settlement warrants preliminary approval given that it falls well within the range of possible approval and is the result of arm's-length negotiations by experienced counsel overseen by a well-respected Mediator. Preliminary approval is, therefore, appropriate. *See, e.g.*, *Trombley v. Nat'l City Bank,* 759 F. Supp. 2d 20, 23 (D.D.C. 2011) (preliminary approval of a class action settlement will be granted if it appears to fall "within the range of possible approval" and "does not disclose

---

[1] The Stipulation is annexed as Exhibit 1 to the Declaration of Carol Villegas, dated June 20, 2018 ("Villegas Decl."). All capitalized terms used herein that are not defined have the same meanings ascribed to them in the Stipulation.

grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys").

Entry of the proposed Preliminary Approval Order will begin the process for consideration of final approval of the proposed Settlement by authorizing that notice of the Settlement's terms and conditions, and Class Members' rights to object and be heard with respect to the Settlement, the proposed Plan of Allocation for the proceeds of the Settlement, and Class Counsel's application for an award of attorneys' fees and expenses, be sent to investors who are believed to be members of the Class.   A final approval hearing (the "Settlement Hearing") will then be conducted so that the Parties and Class Members may present arguments and evidence for and against the Settlement, and the Court will then make a final determination as to whether the Settlement is fair, reasonable, and adequate.

To facilitate this process, the proposed Preliminary Approval Order will, among other things:  (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) approve the form and content of the Settlement Notice, Claim Form, and Summary Notice attached as Exhibits 1, 2 and 3 to the Preliminary Approval Order; (iii) find that the procedures for distribution of the Settlement Notice and Claim Form and publication of the Summary Notice provided in the Preliminary Approval Order constitute the best notice practicable under the circumstances and comply with due process, Rule 23 of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (iv) set the deadlines and procedures both for objecting and for opting back into the Class;[2] and (v) set a date and time for

---

[2] As explained below, in connection with class certification, potential Class Members were previously given the opportunity to seek exclusion from the Class.  *See, e.g.,* ECF No. 115 ¶¶ 12-14.

the Settlement Hearing, at which the Court will consider final approval of the Settlement, the proposed Plan of Allocation for the proceeds of the Settlement, and Class Counsel's application for attorneys' fees and litigation expenses, including reimbursement of costs and expenses (including lost wages) to Class Representatives pursuant to the PSLRA.

In light of the significant benefit achieved for the Class, the substantial costs and risks of continuing litigation through trial and appeals, and the fact that the proposed Settlement is the result of arm's-length negotiations by experienced counsel overseen by a well-respected mediator, it is respectfully submitted that the Settlement warrants preliminary approval so that notice can be provided to the Class.

## HISTORY OF THE LITIGATION

This securities fraud class action was commenced with the filing of a complaint on July 14, 2014. ECF No. 1. Following briefing, and pursuant to the PSLRA, the Court entered an Order appointing Caisse and NNERF as Lead Plaintiffs for the proposed class, approving Lead Plaintiffs' selection of Labaton Sucharow LLP ("Labaton Sucharow") and Spector Roseman Kodroff & Willis, P.C. (now Spector Roseman & Kodroff, P.C.) ("Spector Roseman") as co-lead counsel, and consolidating related securities class actions into the litigation, *Howard v. Liquidity Services, Inc.* ECF No. 32.

Class Representatives allege that LSI and the Individual Defendants violated the federal securities laws by making materially false and misleading statements and failing to disclose information to investors about the financial performance of the Company's retail division, as well as making further allegations not related to the retail division. Class Representatives further allege that the false and misleading statements and omissions inflated the price of LSI's common

stock and that when Defendants later allegedly disclosed that the retail division was not performing as strongly as plaintiffs had been previously indicated, and that LSI's retail growth could not be sustained, LSI's stock price declined.

On behalf of the Class, Class Counsel conducted a thorough and far reaching investigation to support the allegations in the Amended Complaint for Violations of the Federal Securities Laws (the "Complaint").  That investigation included, among other things, a review and analysis of: (i) documents filed publicly by the Company with the U.S. Securities and Exchange Commission ("SEC"); (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning the Company and the Defendants; (iii) research reports issued by financial analysts concerning the Company; (iv) other publicly available information and data concerning the Company; and (v) interviews with 31 former employees of the Company and third-parties with relevant knowledge.

On December 15, 2014, Lead Plaintiffs filed the Complaint (ECF No. 35), asserting claims under Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 ("Exchange Act").

On March 2, 2015, Defendants moved to dismiss the Complaint.  ECF No. 40.  On March 31, 2016, the Court issued a Memorandum Opinion, as well as an Order, denying in part (as to the retail division) and granting in part (as to the other allegations in the Complaint) Defendants' motion to dismiss.  ECF No. 52-53.  Thereafter, on May 16, 2016, Defendants filed their answer to the Complaint, denying all allegations of wrongdoing or damages and asserting affirmative defenses.  ECF No. 56.

On November 21, 2016, Defendants moved for reconsideration of the Court's decision on the motion to dismiss.  ECF No. 73. On December 6, 2016, Defendants moved to stay discovery. ECF No. 75.  Lead Plaintiffs opposed both motions on December 16, 2016.  ECF No. 77.  On December 21, 2016, the Court denied Defendants' motion for reconsideration with leave for that motion to be renewed at summary judgment, and denied their motion to stay discovery as moot. *See* Minute Order, December 21, 2016.

On September 2, 2016, Lead Plaintiffs moved for class certification (ECF No. 64), which included a report by Lead Plaintiffs' expert on market efficiency (ECF No. 64-4).  Defendants opposed the motion on March 14, 2017.  ECF No. 81. Two weeks later, on April 5, 2017, Defendants moved for partial summary judgment on the issue of reliance.  ECF No. 83.  Lead Plaintiffs opposed the summary judgment motion on May 16, 2017. ECF No. 90-91.  On September 6, 2017, the Court certified the Class, appointed Caisse and NNERF as Class Representatives, and appointed Co-Lead Counsel as Class Counsel.  ECF No. 100-101.  In the same Order, the Court denied Defendants' motion for partial summary judgment. *Id.*

On November 17, 2017, the Class Representatives filed an unopposed motion for approval of the form and content of notices of the pendency of the Action as a class action, and the methods for providing notice to the Class.  ECF No. 109-110.  On November 21, 2017, the Court entered an order approving Class Representatives' notice of pendency program, which included a Notice of Pendency of Class Action that was mailed by first-class mail (the "Class Notice") to all potential Class Members who could be identified, and publication of a Summary Notice of Pendency of Class Action in *Investor's Business Daily* and over the internet.  ECF No. 111.

Beginning on December 21, 2017, the Class Notice was mailed to potential Class Members.  ECF No. 115.  On January 1, 2018, the publication Summary Notice was disseminated.  *Id*.  The Class Notice was also posted on the website created for the Action, www.LiquidityServicesSecuritiesLitigation.com.  In addition to summarizing the status of the Action and the proceedings to date, the Class Notice provided Class Members with the opportunity to request exclusion ("opt out") from the Class, explained that right, and set forth procedures for doing so.  The Class Notice informed Class Members that if they did not request exclusion, they would remain a member of the Class, and that they would "be legally bound by all of the orders the Court issues and judgments the Court makes in this Action, whether favorable or unfavorable."  The deadline for mailing any requests for exclusion from the Class was February 20, 2018.  Nine requests for exclusion from the Class were received, of which six were valid.  ECF No. 115.

Counsel for Class Representatives and Defendants conducted thorough class, fact, and expert discovery.  Class Counsel reviewed and analyzed approximately 500,000 pages of documents produced by Defendants and third-parties, which included approximately 274,000 pages from Defendants and approximately 223,000 from third-parties.  Counsel for the Parties also took or defended 15 depositions, including the depositions of Class Representatives, Class Representatives' investment advisors, numerous current and former employees of the Company, and Class Representatives' market efficiency expert.  Class Representatives also submitted one expert report directed at market efficiency, loss causation, and damages.

## SETTLEMENT NEGOTIATIONS

In December 2017, the Parties engaged the Honorable Layn R. Phillips (Ret.), a well-respected and highly experienced mediator and retired federal judge with considerable knowledge and expertise in the field of securities class actions, to assist them in exploring a potential negotiated resolution of the Action.  On February 8, 2018, Class Counsel and counsel for Defendants met for a full day with Judge Phillips in an attempt to reach a settlement.  In advance of the mediation session, the Parties provided detailed mediation statements and exhibits to Judge Phillips, which addressed the issues of both liability and damages.  However, the mediation session did not result in an agreement to settle the Action.  Following the mediation, Judge Phillips continued his efforts to facilitate discussions and to mediate a potential resolution of the Action by the Parties.  Ultimately, the Parties reached an agreement in principle to settle the Action on March 7, 2018.  After further extensive negotiations, the Parties executed a Term Sheet as of April 12, 2018.  The Parties subsequently negotiated the Stipulation, which sets forth the final terms and conditions of the Settlement, including, among other things, a release of claims against Defendants in return for a cash payment by or on behalf of Defendants of $17,000,000 for the benefit of the Class.

## ARGUMENT

## I.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.   The Standard for Preliminary Approval

District court review of a class action settlement proposal is a two-step process.  Newberg on Class Actions §13:12 (5th ed. 2015). The first step is a preliminary, pre-notification determination of whether "notice of the proposed settlement should be sent to the class."  *Id*. at

§13:13.   In the first step, the Court makes a preliminary evaluation of the fairness of the

settlement before directing that notice be given to the class.   At this preliminary approval stage,

the standards are more relaxed than those applied to a motion for final approval.   *See Trombley*,

759 F. Supp. 2d at 25-26 (granting preliminary approval based on no obvious deficiency on

adequacy of settlement amount but indicating additional information required for final approval).

As noted above, a court will ordinarily grant preliminary approval where, as here, the

proposed settlement appears to fall "within the range of possible approval" and "does not

disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential

treatment of class representatives or segments of the class, or excessive compensation for

attorneys."   *Trombley*, 759 F. Supp. 2d at 23 (citation omitted). The Court will consider "(1)

whether the proposed settlement appears to be the product of serious, informed, non-collusive

negotiations, (2) whether it falls within the range of possible judicial approval, and (3) whether it

has any obvious deficiencies, such as granting unduly preferential treatment."   *Richardson v.

L'Oreal USA, Inc*., 951 F. Supp. 2d 104, 106, 107 (D.D.C. 2013) (citing *In re Vitamins Antitrust

Litig*., No. 99–197, 1999 WL 1335318, at *5 (D.D.C. Nov. 23, 1999)).[3]

Class Representatives request that the Court take the first step in the settlement approval

process and grant preliminary approval of the Settlement such that notice of the Settlement can

be given to the Class.   As summarized below, and as will be detailed further in a subsequent

---

[3] At the final approval hearing, the Court will have before it extensive papers submitted in support of the proposed Settlement and will be asked to make a determination as to whether the Settlement is fair, reasonable and adequate, under all of the circumstances.   At this juncture, however, Class Representatives request only that the Court grant preliminary approval of the Settlement.

motion for final approval of the Settlement, this Settlement is well within the range of possible approval, and therefore warrants preliminary approval.

### B.       The Settlement Is Well Within the Range of Reasonableness

Defendants have agreed to settle this Action for $17,000,000, to be paid from their directors' and officers' insurance.  In evaluating whether this amount falls within the range of reasonableness, the Court should evaluate the terms of the settlement in relation to the strength of the plaintiffs' claims in this particular case.  *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, 4 F. Supp. 3d 94, 104 (D.D.C. 2013).  The Court can also consider whether the recovery falls within the range of possible approval based on other approved class action settlements.  *See Trombley*, 759 F. Supp. 2d at 25.

Although Class Representatives and their counsel believe their case to be meritorious, they acknowledge that Defendants advance several substantial arguments concerning liability and damages.  Indeed, even though the Court sustained the claims alleged in the Complaint, in part, and certified the Class, pursuing the Class' claims through renewed summary judgment and trial would pose significant risks and uncertainty.

First, with respect to liability, Class Representatives would have faced significant hurdles in proving that the evidence elicited during discovery was sufficient to establish that the alleged misstatements and omissions were materially false or misleading. Among other factual defenses, Defendants have argued that the alleged misstatements concerning competition, organic growth, and profit margins are not actionable because such statements were, *inter alia*, true, or immaterial puffery, or did not relate (in whole or in part) to the retail division. If the litigation continued, Class Representatives and their counsel believe that there was a considerable risk that

Defendants could have been successful in arguing that Plaintiffs failed to meet their burden in creating a triable issue of material falsity as to some, if not all, of the foregoing misstatements and omissions.

Second, Class Representatives would have faced challenges in proving that Defendants acted with the required intent to defraud or "extreme recklessness" necessary to establish Defendants' scienter.  Specifically, Defendants would have argued, among other things, that: (i) Defendants could not have materially inflated the retail division's sales figures due to the inherent controls and limitations in the Company's financial accounting system; (ii) the Individual Defendants were not made aware of negative trends in the retail division through internal reports and, indeed, were aware of positive trends and improved results in retail operations and financial results; (iii)  Defendants repeatedly disclosed adverse information, warned about potential future events (including margins), and adjusted public guidance downward – and there were no disclosures that were "corrective" at all; and (iv) Defendant Angrick's stock sales during the Class Period were not suspicious in timing or amount, had been disclosed in advance on Forms 8-K and did not otherwise contribute to an inference of scienter.

In addition, even if the hurdles to establishing liability were overcome, Class Representatives would have confronted significant challenges in establishing loss causation and damages. Class Representatives' damages expert has estimated that if liability were to be established with respect to all of the claims, including all alleged corrective disclosures, the likely maximum aggregate damages recoverable at trial would be approximately $415 million. This damages figure assumes that every element of the Class's damages theory (as well as all of the assertions of liability) would be accepted by a jury. As such, damages could be negatively

impacted by many factors that could arise in continued litigation.  For instance, Defendants have argued, and would continue to argue, that LSI's stock price was not inflated as a result of any alleged misstatement or omission and, even if it were, there was no attendant "corrective" disclosure that caused the stock price to decline.  Defendants have also argued that, due to certain inflationary events, actual damages would be significantly less.  Finally, Defendants have argued that Class Representatives would not be able to provide a reliable method for disaggregating retail-related information in the alleged corrective disclosures from other information (*e.g.,* reduced forward-looking guidance) contained in the alleged corrective disclosures and would therefore be unable to establish a reliable damages figure at trial.  If any of the foregoing arguments were accepted, in whole or part, they would dramatically limit any potential recovery.

Furthermore, in order to succeed, Class Representatives would have had to prevail at multiple additional stages in the litigation – further motions for summary judgment and trial and, even if Class Representatives prevailed on those, in an appeal that was likely to follow.  At each of these stages, there would be significant risks attendant to the continued prosecution of the Action, and there was no guarantee that further litigation, which would have involved additional significant expense and delay, would have resulted in a higher recovery, or any recovery at all.

The Settlement avoids all of these risks and achieves a fair and adequate result, which is well within the range of reasonableness, without the need for prolonged and uncertain litigation.  The substantial payment of $17 million is well above the $6 million median nation-wide settlement amount in securities class actions in 2017, even though the litigation did not involve any conduct that ever resulted in any restatement, SEC or other governmental proceedings against, or even an investigation of, any defendant.  *See*, *Recent Trends in Securities Class*

*Action Litigation: 2017 Full-Year Review*, by Stefan Boettrich and Svetlana Starykh, (NERA 2018), at 30, Villegas Decl. Exhibit 2.  The Settlement also represents a favorable recovery of approximately 4% of what would be maximum estimated damages, which are explained above, under a scenario where Class Representatives were able to prove liability for the entire Class Period and were successful in establishing that 100% of each of the alleged corrective disclosures was related to the alleged fraud. The Settlement would represent a significantly greater proportional recovery if, for instance, the Class were only able to recover for part of the Class Period or if only some of the corrective disclosures and attendant damages were proven. The Settlement ratio also improves significantly if Defendants' arguments regarding the inflationary impact of certain events were credited in whole or in part. Overall, the recovery provided by the Settlement is well-within the range of reasonableness. *See In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, 4 F. Supp. 3d at 103 (settlement value approximating "4-8% of the best case scenario potential recovery" deemed reasonable).

### C.   There Are No Obvious Deficiencies or Reasons to Doubt the Settlement's Fairness

There is no doubt the Settlement was fairly and honestly negotiated.  Courts recognize a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, 4 F. Supp. at 102 (citing *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 104).

As noted above, the Settlement was achieved only after extensive arm's-length negotiations involving an experienced mediator with considerable knowledge and expertise in the field of securities class actions. As part of the mediation proceedings, both Class Counsel and

Defendants' Counsel prepared and presented submissions concerning their respective views regarding the merits of the litigation, including the evidence adduced during the course of discovery, Defendants' defenses, and issues related to class-wide damages. Counsel and the mediator engaged in a full-day, in-person mediation session, followed by several weeks of formal discussions, until eventually agreeing in principle to settle the Action. The parties then worked over the subsequent months to finalize the terms of the Stipulation.

Moreover, the Parties reached the Settlement only after vigorously litigating, conducting substantial discovery, and consulting with multiple experts. As noted above, Class Representatives conducted an extensive investigation prior to filing the Complaint, which included interviews with 31 former LSI employees/third parties with relevant knowledge and a thorough review of publicly available information; briefed oppositions to Defendants' motion to dismiss, motion for reconsideration addressed to the Complaint's confidential witnesses, and motion for partial summary judgment; successfully moved for class certification; reviewed and analyzed approximately 274,000 pages of documents produced by Defendants and approximately 223,000 pages of documents produced from third-parties; took or defended 15 depositions; consulted with damages, accounting, and industry experts; and had the benefit of mediation submissions and presentations by Defendants setting forth their arguments on liability and damages.  As a result, Class Representatives and Class Counsel had a well-grounded basis for assessing the strengths and weakness of the Class's claims and Defendants' defenses when they agreed to settle the Action.  All of these circumstances support preliminary approval. *See, e.g., Trombley,* 759 F. Supp. 2d at 23 (preliminarily approving settlement and noting that it "for now [] it is enough that the parties represent that formal and informal discovery facilitated a

significant investigation of the relevant facts contributing to arms-length settlement negotiation").

Accordingly, the Settlement is a product of informed and fair negotiations among experienced counsel, following extensive discovery, and is deserving of preliminary approval.

### D. The Settlement Treats All Class Members Fairly and Does Not Improperly Grant Preferential Treatment to Class Representatives or any Segment of the Class

The Settlement does not improperly grant preferential treatment to either Class Representatives or any segment of the Class. Rather, all members of the Class, including Class Representatives, will receive an allocation of the Net Settlement Fund pursuant to a Plan of Allocation prepared by Class Counsel with the assistance of Class Representatives' damages expert.[4]

At the final Settlement Hearing, the Court will also be asked to approve the proposed Plan of Allocation for the Net Settlement Fund, which is set forth in full in the Settlement Notice. Here, the proposed Plan of Allocation is based on Class Representatives' allegations that the price of LSI common stock was artificially inflated during the Class Period as a result of Defendants' alleged materially false and misleading statements and omissions, and that the inflation was removed over time in reaction to a series of public disclosures that the Class

---

[4] In connection with Class Counsel's application for an award of attorneys' fees and litigation expenses, Class Representatives presently intend to seek reimbursement of their reasonable costs and expenses (including lost wages) directly related to their participation in the Action. Reimbursement of Class Representatives' costs and expenses is explicitly contemplated by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(4) (limiting a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but also providing that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class").

Representatives contend partially corrected the alleged misrepresentations and omissions.  The proposed Plan of Allocation provides formulas for calculating the recognized claim of each Class Member, based on each such person's purchases/acquisitions and sales of LSI common stock during the Class Period.

E.     **The Settlement Does Not Excessively Compensate Class Counsel**

The proposed Settlement does not grant excessive compensation to Class Counsel.  As an initial matter, the reasonableness of attorneys' fees will be decided by the Court only after Class Counsel file a motion for attorneys' fees and expenses, and after approval of the Settlement, and is not at issue in this motion.

In connection with Class Counsel's Fee and Expense Application, Class Counsel will seek, on behalf of all Plaintiffs' Counsel, no more than 25% of the Settlement Amount, an amount that is well within the percentages that courts in the D.C. Circuit approve in securities class actions with comparable recoveries.  *See, e.g*., *Trombley,* 826 F. Supp. 2d at 205–06 ("It has been observed that fee awards nationally appear to fall in a range of 20% to 30% of the common fund, and that the fees in this Circuit mirror those nationwide numbers.").  If approved by the Court, the fee award will include a referral payment to attorney Jean-Felix Brassard (and his former law firm Stein Monast L.L.P.), who worked on behalf of Class Representative Caisse.  The payment will not increase the fees that will be deducted from the Settlement Fund.

Class Counsel will also seek payment of their litigation expenses in connection with the prosecution of this Action of no more than $980,000, from which Class Representatives may seek an award of no more than $100,000 in total pursuant to the PSLRA to reimburse them for their expenses and/or the time that they spent representing the Class.

The attorneys' fees and expense requests will be detailed in a motion filed in advance of the Settlement Hearing.

## II.     THE PROPOSED NOTICE PLAN AND FORMS SHOULD BE APPROVED

The proposed Settlement Notice and Summary Notice, attached as Exhibits 1 and 3 to the proposed Preliminary Approval Order, respectively, satisfy due process, the federal rules and the PSLRA.  Under Rule 23(c)(2), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2); *Fed. Nat'l Mortg. Ass'n. Sec. Derivative & Erisa Litig.* 4 F. Supp. 3d at 101. Due process is satisfied if the notice is "reasonably calculated … to apprise interested parties of the pendency of the action and afford[s] them an opportunity to present their objections." *Brown v. Wells Fargo Bank, N.A.*, 869 F. Supp. 2d 51, 64 (D.D.C. 2012) (ellipsis in original) (internal quotations omitted).

Collectively, the proposed forms of notice describe, *inter alia*, (i) the terms of the Settlement and the recovery; (ii) the considerations that caused Class Representatives and Class Counsel to conclude that the Settlement is fair, adequate, and reasonable; (iii) the maximum attorneys' fees and expenses that may be sought; (iv) the procedure for opting back into the Class;[5] (v) the procedure for objecting to the Settlement, the proposed Plan of Allocation, and the

---

[5] Class Members were given the opportunity to request exclusion from the Class in connection with the Class Notice, which was mailed in December 2017. Accordingly, the Settlement Notice explains how Class Members can opt back into the Class, if they previously requested exclusion.  The Class Notice does not provide a second opt out opportunity in connection with the Settlement.  The Class Notice was sent out only six months ago (the opt-out period ended some four months ago), fully apprised Class Members of the pre-settlement status of the litigation, and advised Class Members, "If you are a Class Member and you do nothing, you will stay in the Class. This means you will be legally bound by all of the orders the Court issues and judgments the Court makes in this Action, whether favorable or unfavorable. If you

request for attorneys' fees and litigation expenses; (vi) the procedure for submitting a claim; (vii) the proposed Plan of Allocation for distributing the settlement proceeds to the Class; and (viii) the date, time and place of the Settlement Hearing.  *See  Fed. Nat'l Mortg. Ass'n. Sec. Derivative & Erisa Litig.*, 4 F. Supp. 3d at 101 (approving notice that provides class members with relevant information regarding how the settlement fund will be allocated, the right of class members to object to the settlement; and the date of the fairness hearing, among other things).

The Settlement Notice also satisfies the PSLRA's separate disclosure requirements by, *inter alia,* stating: (i) the amount of the Settlement determined in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the average amount of damages per share that would be recoverable should the case proceed; (iii) that Class Counsel intend to make an application for attorneys' fees and expenses (including the amount of such fees and expenses on an average per share basis); (iv) the name, telephone number, and address of Class Counsel; and (v) the reasons why the Parties are proposing the Settlement.  15 U.S.C. §78u-4(a)(7)(A)-(F).

The proposed notice program uses the traditional methods for notifying class members: notification by mail and by publication in a national newspaper focusing on investors.  Upon

---

stay in the Class and money is paid to the Class, either through a settlement with Defendants or a judgment of the Court after trial, you may be eligible to receive a share of that recovery.  Keep in mind that if you do nothing now, regardless of whether Class Representatives win or lose the case, you will not be able to sue Defendants in any other lawsuit about the same claims that are the subject of this Action."  Class Notice at 3, ECF No. 115.

Where class members have "been given notice of the action, the opportunity to opt out, notice of the proposed settlement, and the opportunity to object," courts have recognized that a second opt-out opportunity is not required. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1289 (9th Cir. 1992).  The U.S. Court of Appeals for the Second Circuit has held that a court is "under no obligation" to grant a second opt-out period and that that decision is "confided to the [district] court's discretion." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006) (finding no abuse of discretion by the district court in denying a second opt-out opportunity).

entry of the Preliminary Approval Order, the Claims Administrator will mail the Settlement Notice and Claim Form to all Class Members who can be identified through reasonable effort, including using mailing information obtained in connection with the Class Notice.   Class Counsel will also cause the Summary Notice to be published in *Investor's Business Daily* and to be transmitted over *PR Newswire*.   In addition, the Settlement Notice and Claim Form will be made available for viewing and downloading on the settlement website. The manner of providing notice, *i.e.*, individual notice by mail supplemented by additional publication and internet notice, represents the best notice practicable under the circumstances, and satisfies the requirements of Rule 23, the PSLRA, and due process.  *See, e.g.*, *Cobell v. Salazar*, 679 F.3d 909, 922 (D.C. Cir. 2012) (finding the notice by publication and mail was sufficient).

Finally, Class Representatives also request that the Court appoint Garden City Group, LLC ("GCG") as the Claims Administrator to provide all notices approved by the Court to Class Members, to process Claim Forms, and to administer the Settlement.  GCG was approved as the administrator for the previously issued Class Notice and is a recognized leader in legal administration services for class action settlements and legal noticing programs and has successfully administered numerous complex securities class action settlements.  *See* Exhibit 3. In particular, GCG has successfully handled the notice and administration of some of the largest and most complicated securities class actions, including the $6.19 billion settlement in the *WorldCom* securities litigation and the $2.2 billion settlement in the *Nortel I* and *II* securities litigations, among many others. *Id*. GCG's in-house staff includes more than 100 former attorneys and a staff members who have or had licenses and certifications in disciplines germane to class action administration, such as CPAs, CFAs, and Series 3, 4, and 7 qualifications.  *Id.*

## III.     PROPOSED SCHEDULE OF EVENTS

Class Representatives respectfully propose the following schedule for the Court's review and approval, which summarizes the deadlines in the proposed Preliminary Approval Order.  If the Court agrees with the proposed schedule, Class Representatives request that the Court schedule the Settlement Hearing for a date approximately 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

| | |
|---|---|
| Deadline for mailing individual Settlement Notices and Claim Forms (the "Notice Date") | *10 business days after entry of Preliminary Approval Order* |
| Deadline for publication in *Investor's Business Daily* and transmission over *PR Newswire* | *Within 14 calendar days of the Notice Date* |
| Deadline for filing motions in support of the Settlement, the Plan of Allocation, and Class Counsel's application for fees and expenses (the "Motions") | *No later than 35 calendar days before the Settlement Hearing* |
| Requests to Opt Back into the Class | *Received no later than 21 calendar days before the Settlement Hearing* |
| Deadline for submission of objections and notices of intent to appear at the Settlement Hearing | *Received no later than 21 calendar days before the Settlement Hearing* |
| Deadline for filing reply papers in support of the Motions | *No later than 7 calendar days before the Settlement Hearing* |
| Settlement Hearing | *At the Court's convenience, approximately 100 calendar days after entry of the Preliminary Approval Order* |
| Deadline for submission of Claim Forms | *Postmarked or received no later than 120 calendar days after the Notice Date* |

## IV.    CONCLUSION

For the foregoing reasons, Class Representatives respectfully request that the Court enter the proposed Preliminary Approval Order, which will: (i) preliminarily approve the Settlement; (ii) approve the proposed manner and forms of notice to Class Members; (iii) appoint GCG as Claims Administrator; (iv) set a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters, and grant such other and further relief as may be required.

Dated: June 20, 2018

**LABATON SUCHAROW LLP**

By:  ___ /s/ *Carol C. Villegas* _____
    Jonathan Gardner (*pro hac vice*)
    Carol C. Villegas (*pro hac vice*)
    140 Broadway
    New York, NY 10005
    Telephone: (212) 907-0700
    Facsimile: (212) 818-0477
    Email:  jgardner@labaton.com
            cvillegas@labaton.com

    Mark S. Willis
    1050 Connecticut Avenue NW, Suite 500
    Washington, D.C. 20036
    Tel.: (202) 772-1880
    Email:  mwillis@labaton.com

    *Counsel for Class Representatives and*
    *Co-Lead Counsel for the Class*

**SPECTOR ROSEMAN & KODROFF, P.C.**

    Andrew D. Abramowitz
    Andrew N. Dodemaide

20

1818 Market Street
Suite 2500
Philadelphia, PA 19103
Tel.: (215) 496-0300
Fax: (215) 496-6611
Email:   aabramowitz@srkattorneys.com
              adodemaide@srkattorneys.com

*Co-Lead Counsel for the Class*

## **CERTIFICATE OF SERVICE**

I certify that on this 20th day of June 2018, I caused the foregoing to be electronically filed with Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.


By:     */s/ Carol C. Villegas*
        Carol C. Villegas