**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LEONARD HOWARD, individually and on behalf of all others similarly situated, | Civil Action No. 14-1183 (BAH) |
| Plaintiff, | Chief Judge Beryl A. Howell |
| v. | |
| LIQUIDITY SERVICES INC., et al., | |
| Defendants. | |

**CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES**
**AND PAYMENT OF LITIGATION EXPENSES, AND**
**INCORPORATED MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

                                                                                     **Page**

TABLE OF AUTHORITIES .................................................................................. iii

PRELIMINARY STATEMENT ............................................................................ 1

ARGUMENT ......................................................................................................... 3

I.      CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES OF 25% OF
        THE COMMON FUND SHOULD BE APPROVED ........................................ 3

        A.      Class Counsel Are Entitled to an Award of Attorneys' Fees from the
                Common Fund ....................................................................................... 3

        B.      A Reasonable Percentage of the Fund Recovered Is the Appropriate
                Method for Awarding Attorneys' Fees in Common Fund Cases ................... 3

        C.      Analysis Under the Percentage Method and the Factors Followed by
                District Courts Within the D.C. Circuit Support a Fee Award of 25% ........ 4

                1.      The Size of the Fund and the Number of Persons Benefitted ........... 5

                2.      The Absence of Objections to Date Supports Approval of the Fee
                        and Expense Request ................................................................... 6

                3.      The Skill and Efficiency of the Attorneys Involved Support
                        Approval of the Fee Request ........................................................ 6

                4.      The Complexity and Duration of the Litigation Support Approval
                        of the Fee Request ...................................................................... 7

                5.      The Risk of Non-Payment Supports the Fee Request ..................... 10

                6.      The Amount of Time Class Counsel Devoted to the Action
                        Supports the Requested Fee ......................................................... 12

                7.      A 25% Fee Award Is Comparable to Attorneys' Fees Awarded in
                        Similar Cases ............................................................................ 14

        D.      The Requested Attorneys' Fees Are Reasonable Under the Lodestar
                Cross-Check ....................................................................................... 15

II.     CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE
        NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ........ 16

III.    CLASS REPRESENTATIVES' REQUEST FOR PSLRA
        REIMBURSEMENT ................................................................................... 18

CONCLUSION..........................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
  No. 04-cv-8141 (DAB), 2010 WL 5060697 (S.D.N.Y. Dec. 2, 2010) ...................................19

*In re Amgen Inc. Sec. Litig.*,
  No. 07-cv-2536 PSG, 2016 WL 10571773 (C.D. Cal. Oct 25, 2016) ...................................16

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ...............................................................................................11

*In re Apple Comput. Sec. Litig.*,
  No. 84-cv-20148, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) .............................................11

*\*In re Baan Co. Sec. Litig.*,
  288 F. Supp. 2d 14 (D.D.C. 2003) .................................................................................. *passim*

*Backman v. Polaroid Corp.*,
  910 F.2d 10 (1st Cir. 1990) ....................................................................................................11

*Bentley v. Legent Corp.*,
  849 F. Supp. 429 (E.D. Va. 1994), *aff'd*, 50 F.3d 6 (4th Cir. 1995) ......................................11

*In re Black Farmers Discrimination Litig.*,
  953 F. Supp. 2d 82 (D.D.C. 2013) .........................................................................................15

*Blum v. Stenson*,
  465 U.S. 886 (1984) .................................................................................................................3

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) .................................................................................................................3

*City of Providence v. Aeropostale, Inc.*,
  No. 11-cv-7132 (CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014)*,
  aff'd, Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ...................................................14

*Cohen v. Chilcott*,
  522 F. Supp. 2d 105 (D.D.C. 2007) .......................................................................................15

*\*In re Fed. Nat'l Mortg. Ass'n Sec. Derivative, & "ERISA" Litig.*,
  4 F. Supp. 3d 94 (D.D.C. 2013) ..................................................................................... *passim*

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-cv-3400 (CM), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ......................................16

*Fogarazzo v. Lehman Bros., Inc.*,
    No. 03-cv-5194 (SAS), 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ......................................8

*In re Genta Sec. Litig.*,
    No. 04-cv-2123 (JAG), 2008 WL 2229843 (D.N.J. May 28, 2008)...........................................8

*Gottlieb v. Wiles*,
    150 F.R.D. 174 (D. Colo. 1993), *rev'd and remanded on other grounds sub
    nom, Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994) .............................................................18

*Hicks v. Stanley*,
    No. 01-cv-10071(RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)....................................19

*In re Ikon Office Sols., Inc. Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000)...............................................................................................13

*In re Initial Pub. Offering Sec. Litig.*,
    No. 21-mc-92(SAS), 2011 WL 2732563 (S.D.N.Y. July 8, 2011)...........................................16

*In re JDS Uniphase Corp. Sec. Litig.*,
    No. 02-cv-1486 CW, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007)......................................11

*Landy v. Amsterdam*,
    815 F.2d 925 (3d Cir. 1987)....................................................................................................11

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    MDL No. 1290 (TFH), 2003 WL 22037741 (D.D.C. 2003) ......................................4, 5, 14, 16

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    No. 04-cv-8144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)...............................................19

*Missouri v. Jenkins*,
    491 U.S. 274 (1989).................................................................................................................13

*In re Portal Software, Inc. Sec. Litig.*,
    No. 03-cv-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007)....................................16

*In re Rent-Way Sec. Litig.*,
    305 F. Supp. 2d 491 (W.D. Pa. 2003).......................................................................................13

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ...............................................................................................11

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993)..........................................................................................3, 4, 14

*Trombley v. Nat'l City Bank*,
    826 F. Supp. 2d 179 (D.D.C. 2011) .........................................................................................14

*In re Vitamins Antitrust Litig.,
    MDL No. 1285, 2001 WL 34312839 (D.D.C. July 16, 2001)..........................................16-17

**Docketed Cases**

In re Harman Int'l Indus., Inc. Sec. Litig.,
    No. 07-cv-1757-RC, slip op. (D.D.C. Sept. 28, 2017)............................................................14

Klugmann v. Am. Capital Ltd.,
    No. 09-cv-00005-PJM, slip op. (D. Md. June 12, 2012) .......................................................14

In re L.G. Philips LCD Co. Ltd. Sec. Litig.,
    No. 07-cv-00909-RJS, slip op. (S.D.N.Y. Mar. 17, 2011) ....................................................14

Public Pension Grp. v. KV Pharm. Co.,
    No. 08-cv-1859 (CEJ), slip op. (E.D. Mo. Apr. 23, 2014) ....................................................14

In re Satyam Comput. Servs. Ltd. Sec. Litig.,
    No. 09-md-2027-BSJ, slip op. (S.D.N.Y. Sept. 13, 2011).....................................................19

In re Sunrise Senior Living, Inc. Sec. Litig.,
    No. 07-cv-00102 (RBW), slip op. (D.D.C. June 26, 2009) ...................................................14

In re Winstar Commc'ns Sec. Litig.,
    No. 01-cv-3014 (GBD), slip op. (S.D.N.Y. Nov. 13, 2013)...................................................19

**Statutes**

15 U.S.C. §78u-4(a)(4) ..................................................................................................................1, 19

15 U.S.C. § 78u-4(a)(6) .....................................................................................................................4

**Other Authorities**

Fed. R. Civ. P. 23(h) ..........................................................................................................................1

Fed. R. Civ. P. 54(d)(2) ......................................................................................................................1

Stefan Boettrich and Svetlana Starykh, Recent Trends in Securities Class Action
    Litigation: 2017 Full-Year Review (NERA Jan. 2018) .....................................................5, 15

## PRELIMINARY STATEMENT

Court-appointed Class Counsel Labaton Sucharow LLP ("Labaton Sucharow") and Spector Roseman & Kodroff, P.C. ("Spector Roseman") (together, "Class Counsel"),[1] respectfully submit this motion, pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, on behalf of all Plaintiffs' Counsel in the Action, for an award of attorneys' fees in the amount of 25% of the Settlement Amount and payment of litigation expenses incurred during the course of the Action.[2]   Class Counsel also seek reimbursement of the Class Representatives' expenses directly related to their representation of the Class, pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4(a)(4).

As detailed in the Stipulation, Liquidity Services, Inc. ("LSI" or "the Company" and, together with William P. Angrick III and James M. Rallo, the "Defendants"), caused its insurers

---

[1] All capitalized terms not otherwise defined herein have the same meanings as set forth in the Stipulation and Agreement of Settlement, dated as of June 19, 2018 (the "Stipulation", ECF No. 117-1).

All exhibits referenced herein are annexed to the Joint Declaration of Jonathan Gardner and Andrew D. Abramowitz in Support of (I) Class Representatives' Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation and (II) Class Counsel's Motion for an Award of Attorneys' Fees and Payment of Litigation Expenses ("Joint Declaration" or "Joint Decl."). For clarity, citations to exhibits that themselves have attached exhibits, will be referenced herein as "Ex.__-__." The first numerical reference is to the designation of the entire exhibit attached to the Joint Declaration and the second numerical reference is to the exhibit designation within the exhibit itself.

The Joint Declaration is an integral part of this motion and is incorporated herein by reference. For the sake of brevity, the Court is respectfully referred to the Joint Declaration for, *inter alia*, a detailed description of the allegations and claims, the procedural history of the Action, the risks faced by the Class Representatives in pursuing litigation, the negotiations that led to a settlement, and a description of the services provided by Class Counsel.

[2] If approved by the Court, the fee award will include a referral payment to attorney Jean-Felix Brassard (and his former law firm Stein Monast L.L.P.), who worked on behalf of Class Representative Caisse de dépôt et placement du Québec. This referral payment will in no way increase the fees that will be deducted from the Settlement Fund. Any attorneys' fees awarded by the Court to Class Counsel will be allocated among all Plaintiffs' Counsel. No other firms will share in the fee.

to pay $17 million in order to secure a settlement of the claims alleged in this proposed class action (the "Settlement").  This recovery is a very favorable result for the Class when evaluated in light of all the relevant circumstances – most notably, the complicated nature of the Action and the risks of continuing to pursue the claims through summary judgment and trial.

Class Counsel have not received any compensation for their successful prosecution of this case, which required more than 20,000 hours of billable time.  Class Counsel respectfully request that Plaintiff's Counsel be awarded an attorneys' fee of 25% of the Settlement Amount, plus accrued interest, and that they be reimbursed out of the Settlement Fund for reasonably incurred litigation expenses in the amount of $790,897.81, plus any accrued interest.  Class Counsel also respectfully request reimbursement for the time that the Class Representatives dedicated to this Action, consistent with the PSLRA, in the aggregate amount of $26,974.66.

The requested fee amount has been approved by Class Representatives Caisse de dépôt et placement du Québec ("Caisse") and the City of Newport News Employees' Retirement Fund ("NNERF") (collectively, the "Lead Plaintiffs" or "Class Representatives"), both sophisticated institutional investors.  *See* Exs. 1 & 2.  In addition, as discussed below, the requested fee is supported by each of the factors applied by district courts within the D.C. Circuit, in assessing the reasonableness of a requested fee from a common fund.  Importantly, the requested fee represents a fractional--or "negative"--multiplier of approximately 0.4 on Class Counsel's total lodestar (*i.e.*, less than the value of the time expended by Class Counsel in this litigation).  In addition, the expenses incurred by Class Counsel in connection with the prosecution of the Action were both reasonable and necessary.

For the reasons set forth herein and in the Joint Declaration, Class Counsel respectfully submit that the attorneys' fees and expenses requested are fair and reasonable under the applicable legal standards and therefore should be awarded by the Court.

## ARGUMENT

## I. CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES OF 25% OF THE COMMON FUND SHOULD BE APPROVED

### A. Class Counsel Are Entitled to an Award of Attorneys' Fees from the Common Fund

It is well settled that attorneys who represent a class and achieve a common fund benefit for class members are entitled to a reasonable fee as compensation for their services.  The Supreme Court has recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also In re Baan Co. Sec. Litig.*, 288 F. Supp. 2d 14, 16 (D.D.C. 2003) (quoting *Boeing*, 444 U.S. at 478).  Indeed, the common fund doctrine allows an "attorney whose efforts created, increased or preserved a fund 'to recover from the fund the costs of his litigation, including attorneys' fees.'"  *In re Baan*, 288 F. Supp. 2d at 16 (quoting *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977)).

### B. A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

In *Blum v. Stenson*, 465 U.S. 886 (1984), the Supreme Court recognized that under the common fund doctrine a reasonable fee may be based "on a percentage of the fund bestowed on the class. . . ."  *Id*. at 900 n.16.  The percentage-of-recovery method has become the preferred method in federal courts nationwide, including the D.C. Circuit.  *See Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1265, 1271-72 (D.C. Cir. 1993) ("a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases"); *see*

*also In re Fed. Nat'l Mortg. Ass'n Sec. Derivative, & "ERISA" Litig*., 4 F. Supp. 3d 94, 110 (D.D.C. 2013) ("our Circuit has joined other circuits in concluding that 'a percentage-of-the-fund method is the appropriate'" method for awarding attorneys' fees in common fund cases) (quoting *Swedish Hosp*., 1 F.3d at 1271)).

Compensating counsel in common fund cases on a percentage basis closely aligns the interests of the lawyers in being paid a fair fee with the interests of the class in achieving the maximum possible recovery in the shortest amount of time.  *See In re Lorazepam & Clorazepate Antitrust Litig*., MDL No. 1290 (TFH), 2003 WL 22037741, at *7 (D.D.C. 2003) (the benefit of applying a percentage of the fund is that it "directly aligns the interests of the Class and its counsel . . . for the efficient prosecution and early resolution of litigation, which clearly benefits both litigants and the judicial system.").  This is particularly appropriate in cases under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), where Congress expressly recognized the propriety of the percentage method of fee awards.  *See* 15 U.S.C. § 78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class".).

Thus, Class Counsel's request for a percentage of the common fund is appropriate and preferred as a means of compensating counsel for the results obtained on behalf of a class of investors.

### C.     Analysis Under the Percentage Method and the Factors Followed by District Courts Within the D.C. Circuit Support a Fee Award of 25%

Class Counsel's request for a fee award of 25% of the Settlement Fund is eminently reasonable, as it readily satisfies the factors that are often used by courts within the D.C. Circuit to evaluate the reasonableness of a requested fee:  (1) the size of the fund created and the number

of persons benefitted; (2) the presence or absence of objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *See Fed. Nat'l Mortg. Ass'n,* 4 F. Supp. 3d at 110-11; *In re Lorazepam & Clorazepate Antitrust Litig.*, 2003 WL 22037741, at *8. As set forth below, all of the above factors militate in favor of approving the requested fee.

### 1. The Size of the Fund and the Number of Persons Benefitted

Class Counsel have achieved, for the benefit of the Class, a substantial recovery of $17 million—significantly more than the $6 million median settlement amount in securities cases in 2017. *See* Stefan Boettrich and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2017 Full-Year Review*, at 30 (NERA Jan. 2018) (reporting median settlement value of $6 million in 2017), attached as Ex. 9 to the Joint Decl. Additionally, the Settlement recovers between approximately 4% and 14% of the total potentially recoverable damages, assuming that liability was established, which compares positively with other securities class action settlements. *See* Joint Decl. ¶¶83-88; *Fed. Nat'l Mortg. Ass'n,* 4 F. Supp. 3d at 103-04 (noting that settlement that represents 4-8% of the potential recovery compares favorably with other cases approving securities class action settlements).

Furthermore, the Settlement is all cash, which means that the members of the Class will receive compensation that was otherwise far from certain when the case began. Given that more than 93,000 Settlement Notices have been mailed to potential Class Members, it is likely that thousands of investors will benefit from the Settlement. *See* Ex. 3 ¶7, Affidavit of Brian Stone Regarding (A) Mailing of the Settlement Notice and Proof of Claim Form; (B) Publication of Summary Notice; and (C) Website and Telephone Helpline, dated August 30, 2018 ("Mailing

Aff."), at ¶7; *see also In re Baan*, 288 F. Supp. 2d at 17 ("since over 17,500 notices were mailed to potential members of the Class, it is likely that the settlement fund will inure to the benefit of a sizeable number of [] investors that sustained damages").  The result achieved here is significant and supports the requested fee.

### 2.     The Absence of Objections to Date Supports Approval of the Fee and Expense Request

The Notice, which was sent to 93,000 potential Class Members and their nominees and disseminated over the internet, *see generally* Ex. 3, provided a summary of the terms of the Settlement and specifically apprised Class Members that Class Counsel would apply for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund and litigation expenses of up to $980,000, including reimbursement to the Class Representatives pursuant to the PSLRA.  *See* Ex. 3-A at 1, 6.  The Notice also advised Class Members that they could object to the Fee and Expense Application and explained the procedure for doing so.  *See id*. at 6.  While the deadline set by the Court for Class Members to object has not yet passed, to date, no objections have been received.[3]  Joint Decl. ¶135.

### 3.     The Skill and Efficiency of the Attorneys Involved Support Approval of the Fee Request

Considerable litigation skills were required in order for Class Counsel to achieve the Settlement in this Action.  As noted in the Joint Declaration, this is a complex case involving difficult factual and legal issues, and the claims have been subjected to an extremely rigorous defense.  Given the many contested issues and dispositive motions made by Defendants, it took highly skilled counsel to represent the Class and bring about the recovery that has been obtained.

---

[3]  The deadline for submitting objections is September 14, 2018.  As provided in the Preliminary Approval Order, Class Counsel will file reply papers no later than September 28, 2018, addressing any objections that may be received.

Class Counsel have not only used their knowledge, skill, and experiences from prior cases, but they were also compelled to develop case-specific expertise on the subject matters presented here—the operation of the Company, the unique and specialized industry in which it exists, and the Company's unique financial metrics, among many other things—to overcome the obstacles presented by Defendants.  The favorable Settlement is attributable in substantial part to the diligence, determination, and hard work of Class Counsel.

As demonstrated by their respective firm resumes (*see* Ex. 4 - D and Ex. 5 - C), Labaton Sucharow and Spector Roseman are among the nation's leading securities class action firms. Class Counsel submit that the skill of their attorneys, the quality of their efforts in the litigation, their substantial experience in securities class actions, and their commitment to the litigation over several years were key to reaching the Settlement.  *See Fed. Nat'l Mortg. Ass'n,* 4 F. Supp. 3d at 112 ("the skill and performance of the attorneys also justifies approval of a substantial fee in this case" where "[p]laintiffs' counsel included firms and attorneys with a great deal of experience in complex class action and securities litigation").

Courts have also recognized that the quality of opposing counsel is important in evaluating the quality of plaintiffs' counsel's work.  *See id.* (noting that the "best testament" to counsel's effectiveness was "battling opposing counsel at the very top of the defense bar"). Here, Defendants are represented by highly skilled and capable counsel from Weil Gotshal & Manges LLP, a law firm with a national reputation for vigorous advocacy in the defense of complex class actions such as this.

### 4.    The Complexity and Duration of the Litigation Support Approval of the Fee Request

The complexity and duration of the Action is another factor this Court should consider, and one that further supports the requested fee.  *See Fed. Nat'l Mortg. Ass'n,* 4 F. Supp. 3d at

111 (noting that complexity and duration of the litigation were among the most significant factors in approving attorneys' fee request).   Indeed, securities litigation is regularly acknowledged to be particularly complex and expensive litigation, usually requiring expert testimony on multiple issues, including loss causation and damages.  *See, e.g., Fogarazzo v. Lehman Bros., Inc.*, No. 03-cv-5194 (SAS), 2011 WL 671745, at *3 (S.D.N.Y. Feb. 23, 2011) ("securities actions are highly complex"); *In re Genta Sec. Litig.*, No. 04-cv-2123 (JAG), 2008 WL 2229843, at *3 (D.N.J. May 28, 2008) ("This [securities fraud] action involves complex legal and factual issues, and pursuing them would be costly and expensive.").

As the Court is well aware, this Action has been vigorously litigated for more than three and a half years and summary judgment, trial, and post-trial proceedings would continue to be both time and resource consuming for the Parties and the Court.  As discussed in detail in the Joint Declaration, the Action alleged violations of the Securities and Exchange Act of 1934 ("Exchange Act"), raising a panoply of issues.  Joint Decl. ¶¶8-42, 72-89.  At every turn, the litigation raised difficult legal and factual issues that required creativity and sophisticated analysis.  The litigation was hotly contested from the motion to dismiss, to class certification, and through the partial summary judgment motion, and it required exhaustive discovery efforts.  Joint Decl. ¶¶8-62.

Class Representatives faced substantial risks in ultimately proving that Defendants' statements and omissions were false and misleading at the time that they were made.  *Id.* ¶¶20, 74-76.  Among other things, to support their case, Defendants would likely put forth evidence refuting Class Representatives' claims regarding the state of LSI's retail business, such as internal data showing that retail sales were actually stronger during the Class Period than at any time prior.  Defendants would have also argued that they told the market at various times

8

throughout the Class Period the truth about the retail division's margins and competition, and that at all times investors were apprised of the state of affairs in Liquidity's retail division. *Id.* Defendants also had numerous defenses to Class Representatives' allegations of scienter that posed very significant hurdles to proving that they acted with an intent to commit securities fraud or with severe recklessness. *Id.* ¶¶21-22, 77-81. As scienter is generally the most difficult element of a securities fraud claim for a plaintiff to prove, Defendants would present a wealth of facts suggesting that any arguably false or misleading statements were not made intentionally.

In addition, the Parties have asserted significantly different positions regarding loss causation and damages. Joint Decl. ¶¶82-89. Defendants had very substantial arguments that the Class Representatives would not be able to prove loss causation and, as a result, damages. Among other things, Defendants would likely contend that the Class Representatives cannot link any drop in LSI's stock price to a false statement about retail competition, sales, or margins and that, without evidence that the alleged misstatements were the source of artificial stock price inflation, the Class Representatives cannot prove that "correction" of those alleged misstatements caused the stock price decline. *Id.* Likewise, Defendants would state that none of the supposed corrective disclosures are, in fact, "corrective" of anything, much less corrective of prior statements as to retail competition, organic growth, or margins. *Id.* ¶84. The Parties also strongly disagreed with each other's damages assumptions and methodologies, particularly the methods by which they disaggregated confounding news and information from the alleged fraud-related causes of the stock drops. *Id.* ¶86-87. Loss causation and damages issues would be vigorously contested at summary judgment and trial, and would no doubt involve a battle of the experts.

Ultimately, had this litigation continued, Class Representatives, through Class Counsel, would have faced the considerable risk of years of litigation with no guarantee of any recovery, much less a greater recovery than the one secured through this Settlement. They would have been required to complete extensive deposition discovery and substantial expert discovery (including preparation of expert reports and expert depositions). After the close of discovery, Defendants would undoubtedly have moved for summary judgment and would have vigorously challenged Class Representatives' experts' testimony. Substantial time and expense would need to be expended in preparing the case for trial, filing and responding to *in limine* motions, and the trial itself would be lengthy and uncertain. Accordingly, Class Counsel submit that an analysis of the complexities faced by the Class, the duration of the case thus far, and the continued duration of the Action, strongly support the requested fee.

## 5.    The Risk of Non-Payment Supports the Fee Request

Class Counsel undertook this Action on an entirely contingent fee basis, assuming a substantial risk that the litigation would yield no or potentially little recovery, which would leave them uncompensated for their investment of time, as well as for their substantial expenses. This Court and others have recognized that the risk inherent in undertaking an action on a contingency fee basis weights in favor of approval. *See*, *e.g.*, *Fed. Nat'l Mortg. Ass'n*, 4 F. Supp. 3d at 112 (the "high risk of nonpayment" militates in favor of the fee award).

In undertaking this responsibility, counsel were duty-bound to devote sufficient (and costly) resources to the prosecution of the Action, and that funds were available to compensate staff and to cover the considerable costs that a case such as this requires. With an average lag time of several years for cases of this type to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. Indeed, Class Counsel received no compensation during the course of this three and half year litigation and incurred

$790,897.81 in expenses for the benefit of the Class, all of which has gone unreimbursed throughout the Action.

The risk of no recovery in complex cases of this type is real.  Indeed, even if Class Representatives had prevailed at trial on both liability and damages, no judgment would have been secure until after the rulings on the inevitable post-judgment motions and appeals became final – a process that would likely take years.  Class Counsel know from experience that despite the most vigorous and skillful efforts, a firm's success in contingent litigation, such as this, is by no means assured, and there are many class actions in which plaintiffs' counsel have expended tens of thousands of hours and millions of dollars in expenses and received ***nothing*** for their efforts.[4]  Even judgments initially affirmed on appeal by an appellate panel do not guarantee recovery.  *See*, *e.g.*, *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (after 11 years of litigation, and following a jury verdict for plaintiffs and an affirmance by a First Circuit panel, plaintiffs' claims were dismissed by an *en banc* decision and plaintiffs recovered nothing).

Because the fee in this matter was entirely contingent, the only certainty was that there would be no fee without a successful result, and that such a successful result would be realized only after considerable effort and the outlay of substantial monies.  This strongly favors approval of the requested fee.

---

[4]  For illustrative examples, *see*, *e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversal of jury verdict of $81 million against accounting firm after a 19-day trial); *Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994), *aff'd*, 50 F.3d 6 (4th Cir. 1995) (directed verdict after plaintiffs' presentation of its case to the jury); *Landy v. Amsterdam*, 815 F.2d 925 (3d Cir. 1987) (directed verdict for defendants after five years of litigation); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict following two decades of litigation); *In re Apple Comput. Sec. Litig.*, No. 84-cv-20148, 1991 WL 238298, at *1-2 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motions); *In re JDS Uniphase Corp. Sec. Litig.*, No. 02-cv-1486 CW, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (defense verdict after four weeks of trial).

### 6.      The Amount of Time Class Counsel Devoted to the Action Supports the Requested Fee

The time and effort expended by Class Counsel in prosecuting this Action and achieving the Settlement establishes that the requested fee is justified.  The Joint Declaration details the substantial efforts of Class Counsel to prosecute the Class Representatives' claims over more than three years of litigation.  As detailed in the Joint Declaration and the individual declarations submitted by Class Counsel, Exs. 4 – 5, they have collectively devoted more than 20,797 hours to the prosecution and resolution of the Action.  *See* Ex. 6 (summary table).

As set forth in greater detail in the Joint Declaration, Class Counsel:

- conducted an extensive factual investigation, which included a thorough review of publicly available information from numerous sources, such as SEC filings, public reports, and news articles concerning the Company and Defendants; interviews with 31 former LSI employees and other individuals with relevant knowledge; and consultation with experts, including those with expertise in the highly specialized reverse supply chain industry in which LSI operated during the Class Period (¶14);

- drafted and filed a detailed Amended Complaint for Violations of the Federal Securities Laws (¶¶14-18);

- successfully opposed Defendants' motion to dismiss and their motion for reconsideration of the Court's order on the motion to dismiss (¶¶19-33);

- successfully moved for class certification and issued class notice (¶¶36-42);

- successfully opposed Defendants' motion for partial summary judgment on the issue of reliance (¶¶39-41);

- engaged in thorough fact discovery, including the analysis of approximately 500,000 pages of documents produced by Defendants and non-parties (¶¶43-62);

- briefed and argued three separate discovery disputes (¶¶57-62);

- took five depositions of LSI representatives, defended two depositions of the Class Representatives, defended the deposition of Class Representatives' market efficiency expert, took the depositions of three non-parties, and took or defended the depositions of four confidential witnesses (¶¶52-56); and

- drafted mediation statements and engaged in extensive mediation efforts with the Honorable Layn R. Phillips (Ret.) (¶¶63-64).

As noted above, Class Counsel have expended 20,797 hours through July 31, 2018 investigating, prosecuting, and resolving this Action.  This investment of time resulted in a combined "lodestar" amount of $10,742,591.75 at Class Counsel's current hourly rates – an amount that is significantly more than the $4,250,000 fee being requested.[5]  *See* Exs. 4-A, 5-A, 6.  With respect to counsel's hourly rates, which range from $460 to $975 for partners, $520 to $775 for of counsels, $375 to $675 for associates, and $335 to $410 for other attorneys, Class Counsel submit that these rates are comparable or less than those used by peer defense-side law firms litigating matters of similar magnitude.  Sample defense firm rates in 2017, gathered by Labaton Sucharow, from bankruptcy court filings nationwide, often exceed these rates.  *See* Joint Decl. ¶107; Ex. 7.

Additional work will also be required of Class Counsel on an ongoing basis, including: preparation for, and participation in, the final approval hearing; responding to any objections; supervising the claims administration process being conducted by the Claims Administrator; and working with the Claims Administrator on the distribution of the Net Settlement Fund to Class Members who have submitted valid Claim Forms.  However, Class Counsel will not seek additional payment for this work.

Thus, Class Counsel respectfully submit that the significant investment of time litigating this Action for the benefit of the Class weighs in favor of the requested attorneys' fee.

---

[5]   Current hourly rates were used, as permitted by the United States Supreme Court and the other courts, to help compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *In re Rent-Way Sec. Litig*., 305 F. Supp. 2d 491, 517 n.10 (W.D. Pa. 2003); *In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 195 (E.D. Pa. 2000).

### 7.    A 25% Fee Award Is Comparable to Attorneys' Fees Awarded in Similar Cases

"Pursuant to *Swedish Hospital*, this Court has considerable latitude on the issue of reasonableness of [attorneys' fees], but as noted by the Circuit, 'a majority of common fund class action fee awards fall between twenty and thirty percent.'" *In re Baan*, 288 F. Supp. 2d at 17 (quoting *Swedish Hosp.*, 1. F.3d at 1272).  Moreover, a 25% attorneys' fee would be consistent with fee awards in securities class actions and other common fund cases within the D.C. Circuit that resulted in comparable recoveries.  *See*, *e.g.*, *In re Sunrise Senior Living, Inc. Sec. Litig.,* No. 07-cv-00102 (RBW), slip op. at 7-8 (D.D.C. June 26, 2009) (awarding fees of 25% of $13.5 million settlement) (submitted herewith as part of compendium of unpublished opinions, Ex. 8); *In re Harman Int'l Indus., Inc. Sec. Litig.,* No. 07-cv-1757-RC, slip op. at 2 (D.D.C. Sept. 28, 2017) (awarding 25% of $28.2 million settlement) (Ex. 8); *In re Baan*, 288 F. Supp. 2d at 22 (awarding 28% of $32 million settlement); *In re Lorazepam & Clorazepate Antitrust Litig.*, 2003 WL 22037741, at *8 (awarding 30% of $35 million settlement); *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 204 (D.D.C. 2011) (awarding 25% of $12 million settlement).

The requested fee is also well within the range of percentage fee awards that have been granted in comparable securities class actions in other Circuits.  *See, e.g., City of Providence v. Aeropostale, Inc.*, No. 11-cv-7132 (CM)(GWG), 2014 WL 1883494, at *12-13 (S.D.N.Y. May 9, 2014) (awarding 33% of $15 million settlement fund*), aff'd, Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015); *Public Pension Grp. v. KV Pharm. Co*., No. 08-cv-1859 (CEJ), slip op. at 2 (E.D. Mo. Apr. 23, 2014) (Ex. 8) (awarding 30% of $12.8 million settlement); *Klugmann v. Am. Capital Ltd*., No. 09-cv-00005-PJM, slip op. at 9 (D. Md. June 12, 2012) (Ex. 8) (awarding 33.3% of $18 million settlement); *In re L.G. Philips LCD Co. Ltd. Sec. Litig*., No. 07-cv-00909-RJS, slip op. at 1 (S.D.N.Y. Mar. 17, 2011) (Ex. 8) (awarding 30% of $18 million settlement);

*see also* Ex. 9 (*NERA*) at 42 (reporting that for settlements valued at between $10 million and $25 million, the median attorneys' fee from 2012 – 2017 was 25%).

Accordingly, it is respectfully submitted that the 25% fee requested here is very comparable to that awarded in similar cases.

**D.      The Requested Attorneys' Fees Are Reasonable Under the Lodestar Cross-Check**

Although an analysis of counsel's lodestar is not required for an award of attorneys' fees in the D.C. Circuit, a cross-check of the fee request with Class Counsel's lodestar demonstrates its reasonableness. *See, e.g., In re Baan*, 288 F. Supp. 2d at 19 (reviewing plaintiffs' counsel's reported lodestar "even though not required in this Circuit under *Swedish Hospital*"); *In re Black Farmers Discrimination Litig.*, 953 F. Supp. 2d 82, 101 (D.D.C. 2013) ("In this circuit, such a lodestar cross-check is not required . . . although district courts are free to employ such a cross-check at their discretion to confirm the reasonableness of an award.") (internal citations omitted).

Here, Class Counsel devoted an aggregate total of more than 20,797 hours to the prosecution and resolution of this Action.  Joint Decl. ¶108; Ex. 6 (Summary of Lodestars and Expenses).  Class Counsel's lodestar – which is derived by multiplying the hours spent on the litigation by each firm's current hourly rates for attorneys, paralegals and other professional support staff – is $10,742,591.75.  *Id.*  Accordingly, the requested 25% fee, if awarded, would represent a significant negative "multiplier" of 0.4, or merely 40% of Class Counsel's combined lodestar.  *See* Exs. 4-A, 5-A; and 6.

Courts have noted that a percentage fee that falls ***below*** counsel's lodestar supports the reasonableness of the award.  *See, e.g., Cohen v. Chilcott*, 522 F. Supp. 2d 105, 123 n.4 (D.D.C. 2007) ("Class counsel is requesting attorneys' fees that are less than their lodestar without any multiplier, which serves as further evidence of the reasonableness of their attorneys' fee

request."); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400 (CM), 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("Lead Counsel's request for a percentage fee representing a significant discount from their lodestar provides additional support for the reasonableness of the fee request."); *In re Portal Software, Inc. Sec. Litig.*, No. 03-cv-5138 VRW, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007) ("negative multiplier . . . suggest[s] that the requested percentage based fee is fair and reasonable"); *In re Amgen Inc. Sec. Litig.*, No. 07-cv-2536 PSG (PLAx), 2016 WL 10571773, at *9 (C.D. Cal. Oct 25, 2016) (same).

A negative multiplier, such as the multiplier here, means that Class Counsel are seeking to be paid for only a portion of the hours expended on the Action. *See In re Initial Pub. Offering Sec. Litig.*, No. 21-mc-92(SAS), 2011 WL 2732563, at *9 (S.D.N.Y. July 8, 2011) (noting that, with a negative multiplier, "every firm was awarded a fraction of its requested fees and was thus compensated for a small fraction of the time spent on the case", citing *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 515-16 (S.D.N.Y. 2009)).

## II.   CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

"In addition to being entitled to reasonable attorneys' fees, class counsel in common fund cases are also entitled to reasonable litigation expenses from that fund." *Fed. Nat'l Mortg. Ass'n*, 4 F. Supp. 3d at 113 (quoting *In re Lorazepam*, 2003 WL 22037741, at *10). Here, Class Counsel have incurred expenses in an aggregate amount of $790,897.81 in prosecuting the Action. *See*. Ex. 6. These expenses are outlined in counsel's declarations submitted to the Court concurrently herewith. *See* Exs. 4-B & D; 5-B.

In assessing whether counsel's expenses are compensable in a common fund case, courts look to whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *See In re Vitamins Antitrust Litig.*, MDL No. 1285, 2001 WL 34312839, at

*13 (D.D.C. July 16, 2001) ("Courts have routinely awarded expenses for which counsel would normally directly bill their clients."). Class Counsel's declarations itemize the various categories of expenses incurred. *See* Exs. 4-B & D, 5-B. Class Counsel submit that these expenses were reasonable and necessary to prosecuting the claims and achieving the Settlement.

One of the most significant expenses was the cost of consultants and experts, which totaled approximately $340,000 or 43% of Class Counsel's total expenses. *See Fed. Nat'l Mortg. Ass'n,* 4 F. Supp. 3d at 113-14 (approving expenses related to plaintiffs' experts and consultants and noting that the experts were necessary to assist counsel in addressing highly complex securities issues and preparing a plan of allocation, among other things); Joint Decl. ¶126. As noted in the Joint Declaration, Class Counsel retained an expert in connection with class certification to opine on, *inter alia*, the efficiency of the market for LSI's common stock and whether the calculation of damages was subject to a common methodology. Joint Decl. ¶36. This expert also performed extensive analyses in connection with loss causation, damages, the mediation, and the Plan of Allocation. *Id.* ¶¶83, 94. Class Counsel also consulted with experts in the fields of accounting and the reverse supply chain industry. *Id.* ¶4.

Courts routinely approve reimbursement of the expenses associated with mediation, the Class Representatives' share of which here amounted to $38,675 for the plaintiffs-side. *See, e.g.*, *Fed. Nat'l Mortg. Ass'n,* 4 F. Supp. 3d at 114. Here, the work done by Judge Phillips was crucial to the resolution of the Action. *See* Joint Decl. ¶¶63-64.

Class Counsel seek reimbursement of approximately $174,000, or approximately 22% of the total expenses, relating to litigation support and the expense of retaining a database provider to host and manage the data from the document productions obtained in the Action. These include the costs associated with: electronic discovery; material produced by confidential

witness; and the representation of confidential witnesses by independent counsel.  *See* Joint Decl. ¶128.

Additionally, Class Counsel seek expenses of $44,670 relating to deposition transcripts and $49,366 relating to computerized research.  Ex. 4-B, 5-B.  These are the charges for computerized factual and legal research services such as LEXIS/Nexis and Westlaw.  It is standard practice for attorneys to use LEXIS/Nexis and Westlaw to assist them in researching legal and factual issues and reimbursement is proper.  In approving expenses for computerized research, the court in *Gottlieb v. Wiles*, 150 F.R.D. 174, 186 (D. Colo. 1993), *rev'd and remanded on other grounds sub nom, Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994), underscored the time-saving attributes of computerized research as a reason reimbursement should be encouraged.  The court also noted that fee-paying clients reimburse counsel for computerized legal and factual research.  *Id.*

Class Counsel also incurred travel expenses, as travel was required in connection with court hearings, fact discovery, and the mediation.  Such expenses are reimbursable.  *See In re Baan,* 288 F. Supp. 3d at 21 (approving expenses in connection with travel).  Overall, the other expenses sought are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour.

In sum, Class Counsel's expenses, in an aggregate amount of $790,897.81, were reasonably and necessarily incurred in the prosecution of the Action and should be approved.

## III.    CLASS REPRESENTATIVES' REQUEST FOR PSLRA REIMBURSEMENT

The PSLRA limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but also provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the

class to any representative party serving on behalf of a class." *See* 15 U.S.C. § 78u-4(a)(4). Here, as detailed in their respective declarations, attached as Exhibits 1 and 2 to the Joint Declaration, Class Representatives are seeking the aggregate amount of $26,974.66 as reimbursement for the time they spent actively participating in the Action and representing the Class.[6] Among other things, each Class Representative assisted with discovery efforts, produced documents, and had a representative deposed.

Courts regularly approve reasonable payments to class representatives to compensate them for the time, effort, and expenses they devoted on behalf of a class. *See, e.g.*, *In re Winstar Commc'ns Sec. Litig.*, No. 01-cv-3014 (GBD), slip op. at 2 (S.D.N.Y. Nov. 13, 2013) (awarding $60,000 to lead plaintiffs) (Ex. 8); *In re Satyam Comput. Servs. Ltd. Sec. Litig.*, No. 09-md-2027-BSJ, slip op. at 3-4 (S.D.N.Y. Sept. 13, 2011) (awarding $193,111 to lead plaintiffs) (Ex. 8); *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04-cv-8141 (DAB), 2010 WL 5060697, at *3 (S.D.N.Y. Dec. 2, 2010) (awarding $30,000 to institutional lead plaintiffs "to compensate them for the time and effort they devoted on behalf of a class"); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04-cv-8144, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009) (awarding a combined $214,657 to two institutional lead plaintiffs).  As explained in one decision, courts "award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Hicks v. Stanley*, No. 01-cv-10071(RJH), 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005).

---

[6]   This total is broken down as follows: (i) Caisse - $11,900 based on 119 hours dedicated to the case at $100 per hour; and (ii) NNERF - $15,074.66 based on 239 hours dedicated to the case at various hourly rates. *See* Exs. 1 ¶8 & 2 ¶¶8-20.

Class Counsel and the Class Representatives respectfully submit that the amounts sought here are reasonable based on the requesting parties' active involvement in the Action from inception to settlement and should be awarded.

## CONCLUSION

For all of the foregoing reasons, Class Counsel respectfully request that the Court award attorneys' fees in the amount of 25% of the Settlement Amount, or $4,250,000, plus accrued interest at the same rate as earned by the Settlement Fund; expenses in the amount of $790,897.81, plus accrued interest at the same rate as earned by the Settlement Fund; and reimbursement to the Class Representatives in the aggregate amount of $26,974.66.  A proposed order will be submitted with Class Counsel's reply submission on or before September 28, 2018, after the deadline for objections have passed.

Dated: August 31, 2018

**LABATON SUCHAROW LLP**

By: ___/s/ *Jonathan Gardner*_____

Jonathan Gardner (*pro hac vice*)
Carol C. Villegas (*pro hac vice*)
140 Broadway
New York, NY 10005
Tel.: (212) 907-0700
Fax: (212) 818-0477
Email:  jgardner@labaton.com
            cvillegas@labaton.com

Mark S. Willis
1050 Connecticut Avenue NW, Suite 500
Washington, D.C. 20036
Tel.: (202) 772-1880
Email:  mwillis@labaton.com

*Counsel for Class Representatives and*
*Co-Lead Counsel for the Class*

**SPECTOR ROSEMAN & KODROFF, P.C.**

20

Andrew D. Abramowitz (*pro hac vice*)
Andrew N. Dodemaide (*pro hac vice*)
1818 Market Street
Suite 2500
Philadelphia, PA 19103
Tel.: (215) 496-0300
Fax: (215) 496-6611
Email:   aabramowitz@srkattorneys.com
             adodemaide@srkattorneys.com

*Co-Lead Counsel for the Class*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 31st day of August 2018, I caused the foregoing to be electronically filed with Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.


By:     */s/ Jonathan Gardner*
                Jonathan Gardner