UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEONARD HOWARD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LIQUIDITY SERVICES INC., *et al.*,<br><br>Defendants. | Civil Action No. 14-1183 (BAH)<br><br>Chief Judge Beryl A. Howell |

**MEMORANDUM OPINION**

After over four years of litigation, the parties in this securities class action have reached a Settlement Agreement, pursuant to which all of the plaintiffs' claims will be resolved in exchange for a cash payment of $17,000,000. Class Representatives Caisse de dépôt et placement du Québec ("Caisse") and the City of Newport News Employees' Retirement Fund ("NNERF") have now filed an Unopposed Motion for Final Approval of Class Action Settlement ("Pls.' Mot. Final Approval"), ECF No. 120, while Class Counsel Labaton Sucharow LLP ("Labaton Sucharow") and Spector Roseman & Kodroff, P.C. ("Spector Roseman") have filed a Motion for an Award of Attorneys' Fees and Payment of Litigation Expenses ("Pls.' Mot. Att'ys' Fees"), ECF No. 121. Following a hearing, on October 5, 2018, to consider whether the proposed settlement is fair, reasonable, and adequate, and finding that the settlement meets these standards, for the reasons set out below, both motions are granted.

**I. BACKGROUND**

The plaintiffs' allegations and details about the alleged misrepresentations and omissions are detailed in the Court's prior opinions in this action. *See Howard v. Liquidity Servs., Inc.* ("*Howard I*"), 177 F. Supp. 3d 289, 295–303 (D.D.C. 2016); *Howard v. Liquidity Servs., Inc.*

1

("*Howard II*"), 322 F.R.D. 103, 108–12 (D.D.C. 2017). The factual and procedural background relevant to understanding the pending motions thus are summarized only briefly, followed by a discussion of the settlement and related proceedings.

### A.     Facts and Procedural Background

Defendant Liquidity Services, Inc. ("LSI") "provides online auction marketplaces for surplus and salvage assets—also known as a reverse supply chain—for which service the company retains a percentage of the sale proceeds." *Howard II*, 322 F.R.D. at 108 (internal quotation marks omitted). In their complaint, the Class Representatives allege that LSI and individual defendants William Angrick, LSI's Chief Executive Officer, and James Rallo, LSI's Chief Financial Officer (collectively, "defendants" or "LSI"), "constructed a story of sustained growth and expansion of LSI's business"—specifically, in LSI's retail division—by issuing a series of "fraudulent and misleading public statements" that "artificially inflated stock prices throughout the class period." *Id.* at 110. According to the complaint, the market learned the truth about the declining growth in LSI's retail division and its troubles with acquisitions "through a series of partial corrective disclosures." Jt. Decl. of Jonathan Gardner & Andrew D. Abramowitz ("Jt. Decl.") ¶ 9, ECF No. 122. After the defendants announced, on May 8, 2014, "below guidance" financial results for the second quarter of fiscal year 2014, *Howard II*, 322 F.R.D. at 111, "LSI's stock price fell from $17.31 per share on May 7, 2014 to $12.17 per share on May 8, 2014, a 29.7% drop," Jt. Decl. ¶ 9, ECF No. 122.

On July 14, 2014, individual investor and original lead plaintiff Leonard Howard filed this class action against LSI asserting claims under § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). Compl. ¶ 1, ECF No. 1. Institutional investors Caisse and NNERF were then appointed co-lead plaintiffs, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15

U.S.C. § 78u-4(a)(3), *see* Order Appointing Lead Pl. & Approving Selection of Counsel at 1, ECF No. 32, and filed an amended complaint on December 15, 2014. *See generally* Am. Compl., ECF No. 35. The defendants' subsequent motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), and the PSLRA, *see generally* Defs.' Mot. Dismiss Am. Compl., ECF No. 40, was granted in part and denied in part, allowing the plaintiffs to proceed with their claim of alleged "misrepresentations regarding the health of LSI's retail and commercial capital assets divisions," as well as their claim that the individual defendants were jointly and severally liable for LSI's alleged § 10(b) violation, *Howard I*, 177 F. Supp. 3d at 311, 316–17. The defendants' motion for reconsideration of the partial denial of their motion to dismiss was also denied. *See* Minute Order (dated Dec. 21, 2016).

The plaintiffs then moved to certify a class consisting of "all persons and entities who purchased or otherwise acquired the publicly traded common stock" of LSI "during the period of February 1, 2012 through May 7, 2014, inclusive," and "who were damaged thereby." Pls.' Mem. Supp. Mot. Class Cert. at 1, ECF No. 64. Meanwhile, the defendants moved for partial summary judgment on the issue of reliance. *See generally* Defs.' Mot. Summ. J., ECF No. 83. On September 6, 2017, the Court addressed both motions, certifying the class as requested by the plaintiffs, *Howard II*, 322 F.R.D. at 117–41, 144, and denying the defendants' motion for partial summary judgment, citing the fact that the defendants' arguments supporting that motion were "virtually identical to the arguments the defendants raise[d] in opposition to the plaintiffs' class certification motion," *id.* at 141. On November 21, 2017, the Court approved the Class Representatives' unopposed motion for approval of the form and content of the notice of pendency and method for providing notice of the class action to potential class members. *See generally* Order, dated Nov. 21, 2017, ECF No. 111. The Garden City Group, LLC ("GCG")

was retained as notice administrator, and notice of the class action was mailed to potential class members, posted on the website designated for the lawsuit, published in *Investor's Business Daily*, and transmitted over *PR Newswire*. *Id.* at 3–4.

B.     **Terms of the Settlement and Notice to the Class**

In December 2017, the parties retained Judge Layn R. Phillips, a former judge of the United States District Court for the Western District of Oklahoma, "to assist them in exploring a potential negotiated resolution of the Action." Pls.' Mot. Prelim. Approval of Settlement ("Pls.' Mot. Prelim. Approval") at 7, ECF No. 116. The parties met with Judge Phillips for a full day on February 8, 2018, and failed to reach an agreement, but Judge Phillips nevertheless "continued his efforts to facilitate discussions and to mediate a potential resolution" and the parties "reached an agreement in principle to settle the Action on March 7, 2018." *Id.* The parties executed a Term Sheet on April 12, 2018, and a Stipulation of Settlement on June 19, 2018. Jt. Decl. ¶ 64. On June 20, 2018, the parties notified the Court that they had reached a proposed settlement that, "if approved by the Court, will resolve all claims asserted, or that could have been asserted, against Defendants in the Action," and requested preliminary approval of that settlement. Pls.' Mot. Prelim. Approval at 1.

The proposed settlement "provides for the resolution of all claims in the Action and related claims . . . in exchange for a cash payment of $17,000,000." Jt. Decl. ¶ 3. The proposed Plan of Allocation "provides for distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based on 'Recognized Loss' formulas tied to liability and damages," *id.* ¶ 95, and the "Recognized Loss Amount" for each authorized claimant "will be calculated by the Claims Administrator for each share of LSI common stock purchased or acquired during the Class Period, as listed in the Claim Form, and for which adequate documents is provided," *id.* ¶ 96. If "[a]ny balance [ ] still remains in the Net Settlement Fund after such

distributions," and that balance "is not feasible or economical to reallocate, after payment of outstanding Notice and Administration Expenses, Taxes, and attorneys' fees and expenses," that remainder "will be donated to one or more not-for-profit organizations recommended by Class Representatives, on notice to Defendants and Defendants' Counsel, and approved by the Court." Pls.' Mot. Final Approval at 18. Class Counsel requests a fee of 25 percent of the Settlement Fund, as well as $790,897.81 in litigation expenses and a "collective request of $26,974.66 to reimburse Class Representatives for their reasonable costs and expenses, including lost wages, pursuant to the PSLRA." Jt. Decl. ¶ 7.

On June 21, 2018, the Court preliminarily approved the settlement agreement, appointed GCG as Claims Administrator, scheduled the final settlement hearing, and approved a plan for providing notice of the proposed settlement to the Class. *See* Order, dated June 21, 2018 at 3–4, ECF No. 118. The Settlement Notice informed potential class members of "their right to opt-back into the Class (for those who previously requested exclusion in connection with the Class Notice); their right to object to any aspect of the Settlement, the Plan of Allocation, or the Fee and Expense Application; and the manner for submitting a Claim Form in order to be eligible to receive a payment from the net proceeds of the Settlement." Jt. Decl. ¶ 67. The Notice also "informed Class Members of Class Counsel's intention to apply for an award of attorneys' fees of no more than 25% of the Settlement Fund and for payment of litigation expenses in an amount not to exceed $980,000." *Id.*

GCG began mailing "Claim Packets" to potential class members, banks, brokerage firms, and other third-party nominees on July 6, 2018, and, as of September 27, 2018, had mailed 93,237 Claim Packets. Pls.' Reply Supp. Mot. Final Approval ("Pls.' Reply") at 1, ECF No. 124. In addition, on July 16, 2018, GCG published the Summary Notice in *Investor's Business Daily* and transmitted it

over the *PR Newswire*. Jt. Decl. ¶ 69; *see also* Jt. Decl., Ex. 3, Aff. of Brian Stone ("Mailing Aff.") ¶ 8, ECF No. 122-3. GCG also "maintains and posts information regarding the Settlement on a dedicated website established for the Action, www.LiquiditySecuritiesLitigation.com, to provide Class Members with information, as well as downloadable copies of the Claim Packet and the Stipulation." Jt. Decl. ¶ 70; *see also* Mailing Aff. ¶ 9. The deadline for class members to submit objections to the Settlement, the Plan of Allocation, or the Fee and Expense Application was September 14, 2018, but, to date, no objections have been received. *See* Pls.' Reply at 1.

### C. Joint Motion for Final Approval and Fairness Hearing

On August 31, 2018, the Class Representatives filed their Unopposed Motion for Final Approval of Class Action Settlement and Class Counsel filed their Motion for an Award of Attorneys' Fees and Payment of Litigation Expenses. As required by Federal Rule of Civil Procedure 23(e), the Court held a fairness hearing on the record on October 5, 2018. Counsel for all parties appeared at the hearing. Although all class members were advised, through the notice campaign, of their opportunity to appear at the hearing, no objectors appeared at the hearing.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval" and "only after a hearing and on [a] finding" by the court that the proposed settlement is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e), (e)(2); *see also Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir. 1998) ("Before it can approve a settlement a district court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." (internal quotation marks omitted)). When evaluating a proposed class-action settlement, the district court "must strike a balance between a rubber stamp approval and the detailed and thorough investigation that it would undertake if it were actually trying the case."

*Cohen v. Chilcott*, 522 F. Supp. 2d 105, 113 (D.D.C. 2007) (internal quotation marks omitted). In applying Rule 23(e), the court "provides a check against settlement dynamics that may 'lead the negotiating parties—even those with the best intentions—to give insufficient weight to the interests of at least some class members,'" *In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 30 (D.C. Cir. 2000) (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 at 238–40 (1995)), by "protect[ing] the interests of those unnamed class members whose rights may be affected by the settlement of the action," *In re Black Farmers Discrimination Litig.*, 856 F. Supp. 2d 1, 26 (D.D.C. 2011). *See also Osher v. SCA Realty I, Inc.*, 945 F. Supp. 298, 304 (D.D.C. 1996) ("Rule 23(e) imposes on this Court the duty of protecting absentee class members, which it executes by 'assuring that the settlement represents adequate compensation for the release of the class claims.'" (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 805 (3d Cir. 1995))). At the same time, "[t]he court's primary task is to evaluate the terms of the settlement in relation to the strength of the plaintiffs' case," and "[t]he court should not reject a settlement merely because individual class members complain that they would have received more had they prevailed after a trial." *Thomas*, 139 F.3d at 231.

Approval of a proposed class-action settlement lies within the discretion of the district court. *See In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 103 (D.D.C. 2004) (citing *United States v. District of Columbia*, 933 F. Supp. 42, 47 (D.D.C. 1996)). That discretion "is constrained," however, "by the principle of preference favoring and encouraging settlements in appropriate cases," *id.* (internal quotation marks omitted), given the "long-standing judicial attitude favoring class action settlements," *id.* (citing *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993)). Thus, "[a]bsent evidence of fraud or collusion, such settlements are not to be trifled with."

*Osher*, 945 F. Supp. at 304 (quoting *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)).

## III. DISCUSSION

The Class Representatives' unopposed motion for final approval of the Proposed Settlement and Plan of Allocation will be addressed first, followed by Class Counsel's motion for attorneys' fees and expenses.

### A. Approval of the Settlement Agreement

In evaluating a proposed settlement, the court must consider whether the proposed settlement is "fair, adequate and reasonable and is not the product of collusion between the parties." *Thomas*, 139 F.3d at 231 (internal quotation marks omitted); *see also* FED. R. CIV. P. 23(e)(2). The D.C. Circuit has not set forth an "obligatory test that this Court must perform" to evaluate a proposed settlement under Rule 23(e). *Osher*, 945 F. Supp. at 304; *see also Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349, 360 (D.D.C. 2007). Rather, courts in this Circuit generally have considered five factors: (1) "whether the settlement is the result of arm's length negotiations"; (2) 'the terms of the settlement in relation to the strength of plaintiffs' case"; (3) "the status of the litigation at the time of settlement"; (4) "the reaction of the class"; and (5) "the opinion of experienced counsel." *In re Vitamins*, 305 F. Supp. 2d at 104; *see also, e.g.*, *Ceccone v. Equifax Info. Servs. LLC*, No. 13-cv-1314, 2016 WL 5107202, at *8 (D.D.C. Aug. 29, 2016); *Cohen*, 522 F. Supp. 2d at 117; *In re Baan Co. Sec. Litig.*, 284 F. Supp. 2d 62, 64 (D.D.C. 2003). The parties urge that these five factors should guide the Court's analysis. Pls.' Mot. Final Approval at 9. These factors are taken in turn.

#### 1. *Arm's-Length Negotiations*

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after

meaningful discovery." *In re Vitamins*, 305 F. Supp. 2d at 104 (internal quotation marks omitted); *see also Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 565 F. Supp. 2d 49, 55 (D.D.C. 2008); *Stephens v. US Airways Grp., Inc.*, 102 F. Supp. 3d 222, 227 (D.D.C. 2015). In determining whether such a presumption is warranted, courts will consider, *inter alia*, the extent of discovery and investigation conducted in the case and the length of the negotiations. *See, e.g.*, *Vista Healthplan*, 246 F.R.D. at 360 (finding arm's-length negotiations when settlement was reached "after extensive discovery, factual investigation, and legal analysis" and was "the result of months of negotiations, including in person and telephonic meetings between counsel, and oversight by" a Magistrate Judge).

The Proposed Settlement meets these requirements. The Class Representatives are represented by Labaton Sucharow and Spector Roseman, "firms that are deeply well-versed in prosecuting securities class actions," Pls.' Mot. Final Approval at 9, while the defendants are represented by Weil Gotshal & Manges, LLP, "a premier international defense firm," *id.* The sophistication and experience of counsel support the arm's-length nature of the negotiations in this case, and the length and nature of the settlement negotiations further support this conclusion. The negotiations "were conducted through a highly experienced and well-regarded mediator and former judge," *id.* at 9–10, and were the product of months of efforts by both parties and the mediator. The parties retained Judge Phillips's services in December 2017, Jt. Decl. ¶ 63, but were "unable to come to an agreement during the February 8, 2018 mediation," Pls.' Mot. Final Approval at 10. After an additional month of negotiation, the parties reached an "agreement-in-principle to settle," and after a month of "further negotiations," the parties "executed a Term Sheet as of April 12, 2018." Jt. Decl. ¶ 64. The parties then spent another two months "negotiating the terms of the Stipulation." *Id.* Moreover, this settlement was reached after

9

"more than three years of litigation and discovery," which "allowed the Parties to fully assess the strengths and weaknesses of the claims and defenses asserted in the Action." Pls.' Mot. Final Approval at 10. Given the absence of any "evidence of collusion or coercion on the part of the parties," the Court has no reason to "doubt that the settlement was the product of legitimate negotiation on behalf of both sides," *Ceccone*, 2016 WL 5107202, at *9 (internal quotation marks omitted), and a presumption of fairness, adequacy, and reasonableness is warranted.

### 2. *Terms of the Settlement in Relation to the Strength of the Plaintiffs' Case*

Assessing the terms of the settlement in relation to the strength of the plaintiffs' case requires "compar[ing] the terms of the settlement with the likely recovery plaintiffs would attain if the case proceeded to trial, an exercise which necessarily involves evaluating the strengths and weaknesses of plaintiffs' case." *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative & "ERISA" Litig.* ("*In re Fannie Mae*"), 4 F. Supp. 3d 94, 103 (D.D.C. 2013). "The D.C. Circuit has suggested that this may be the most important factor in evaluating a proposed class settlement." *Ceccone*, 2016 WL 5107202, at *9 (citing *Thomas*, 139 F.3d at 231); *see also In re Black Farmers*, 856 F. Supp. 2d at 26 ("By far the most important factor is a comparison of the terms of the compromise or settlement with the likely recovery that plaintiffs would realize if the case went to trial.").

The Class Representatives describe the $17 million settlement as "a very favorable result" that "weighs heavily in favor of approval," Pls.' Mot. Final Approval at 11, and in light of the complicated litigation history of this action, they are correct. Absent a settlement, the Class Representatives would face risks in proving the falsity of the alleged misstatements, given that the defendants would have argued "that the challenged statements about competition in the retail division were in fact accurate, or at most were immaterial comments," Jt. Decl. ¶ 74; that "internal data shows that retail sales were actually stronger during the Class Period than at any time prior," *id.* ¶ 75; and that the statements regarding financial guidance and expectations "were

10

either accurate statements of historical earnings or forward-looking statements that were accompanied by meaningful cautionary language," *id.* ¶ 76. The Class Representatives would face similar difficulties in establishing scienter, loss causation, and damages. *See id.* ¶¶ 77–89. Settlement at this stage also allowed the Class Representatives to avoid a potential *Daubert* challenge, a "battle of the experts," *id.* ¶ 91, and many other trial risks, since "[i]n order to recover any damages at trial, the Class Representatives would have had to complete expert discovery, prevail in a summary judgment challenge, at trial and, even if the Class Representatives prevailed at those stages, in the appeals that would likely follow," *id.* ¶ 90.

In light of these challenges, the $17 million settlement is reasonable in relation to the strength of the Class Representatives' case. According to the Class Representatives' damages expert, this settlement amount "constitutes approximately 4% of the **maximum** realistic recoverable damages (i.e., approximately $415 million)." Pls.' Mot. Final Approval at 12 (emphasis in original). The Class Representatives acknowledge that "there is a significant risk that the actual recoverable damages would be much less than $415 million and closer to $118 million, if Defendants were able to convince the Court, at summary judgment, or the jury that there were no false statements until 2013." *Id.* Thus, "[u]sing the $118 million figure, the Settlement recovers approximately 14% of potential damages," an amount that "compares positively with other securities class action settlements." *Id.* at 13; *see also In re Fannie Mae*, 4 F. Supp. 3d at 103–04 (finding settlement of "4–8% of the 'best case scenario' potential recovery . . . compare[d] favorably with other cases approving securities class action settlements"); *In re Baan Co. Sec. Litig.*, 288 F. Supp. 2d 14, 17 (D.D.C. 2003) (finding median settlement in similar securities class actions is 3.6 percent of estimated damages); *In re Newbridge Networks Sec. Litig.*, No. 94-cv-1678, 1998 WL 765724, at *2 (D.D.C. Oct. 22, 1998) (finding a range of 6 to

12 percent of potential trial recovery "seems to be within the targeted range of reasonableness"). Accordingly, a settlement that ranges from approximately 4 percent to 14 percent of potentially recoverable damages compares favorably with other similar securities class-action settlements, thereby weighing in favor of approval.

### 3. *Status of Litigation at the Time of Settlement*

The third factor requires assessing the status of the litigation at the time of settlement. "In determining whether a proposed class action settlement is fair, adequate, and reasonable, courts consider whether counsel had sufficient information, through adequate discovery, to reasonably assess the risks of litigation vis-a-vis the probability of success and range of recovery." *Cohen*, 522 F. Supp. 2d at 117 (internal quotation marks omitted). The settlement must "not come too early to be suspicious nor too late to be a waste of resources," but instead should occur "at a desirable point in the litigation for the parties to reach an agreement and to resolve the[ ] issues without further delay, expense, and litigation." *In re Vitamins*, 305 F. Supp. 2d at 105.

The parties engaged in over three and a half years of hard-fought litigation before reaching a settlement, including "vigorous motion to dismiss briefing, partial summary judgment briefing, multiple discovery motions, and class certification briefing." Pls.' Mot. Final Approval at 14. The parties also conducted extensive discovery, resulting in the Class Representatives reviewing "approximately 500,000 pages of documents produced by Defendants and third parties"; taking "eight depositions of fact witnesses"; "defend[ing] two depositions of the Class Representatives"; "participat[ing] in four depositions of confidential witnesses"; and "defend[ing] one expert deposition in connection with class certification." Jt. Decl. ¶ 43. The defendants reviewed "approximately 120,000 pages of documents" and took "two depositions of the Class Representatives' personnel." *Id.* ¶ 53. Given these efforts and the thorough briefing conducted at each stage of this litigation, the parties had access to "sufficient information, through adequate

discovery, to reasonably assess the risks of litigation" before settlement, *Cohen*, 522 F. Supp. 2d at 117 (internal quotation marks omitted), and this settlement "do[es] not come too early to be suspicious nor too late to be a waste of resources," *In re Vitamins*, 305 F. Supp. 2d at 105.

### 4. *Reaction of the Class*

Next, the Court must consider the class members' reactions to the proposed settlement. *See Ceccone*, 2016 WL 5107202, at *10 ("The attitude of the members of the class, as expressed directly or by failure to object, after notice, to the settlement, is a proper consideration for the trial court." (quoting *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975))). As courts in this Circuit have noted, "[t]he existence of even a relatively few objections certainly counsels in favor of approval." *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at *6 (D.D.C. June 16, 2003); *see also Stephens*, 102 F. Supp. 3d at 229. Here, the Class Representatives "fully endorse" the Proposed Settlement. Pls.' Mot. Final Approval at 14; *see also* Jt. Decl., Ex. 1, Decl. of Jérôme Lussier (Caisse) ("Caisse Decl.") ¶ 6, ECF No. 122-1; Jt. Decl., Ex. 2, Decl. of Frank S. James (NNERF) ("NNERF Decl.") ¶ 6, ECF No. 122-2. Moreover, as of September 27, 2018, "93,237 Claim Packets ha[d] been mailed to potential Class Members or their nominees," and "*[n]o one* has objected to the Settlement, the Plan of Allocation, or the requested attorney's fees and expenses." Pls.' Reply at 1 (emphasis in original). Accordingly, the lack of any objections to any aspect of the Settlement Agreement weighs in favor of approval.

### 5. *Opinion of Experienced Counsel*

The fifth and final factor is the opinion of experienced counsel regarding the proposed settlement agreement. *See Vista Healthplan*, 246 F.R.D. at 363 ("[T]he opinion of experienced counsel 'should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement.'" (quoting *In re Lorazepam*, 2003 WL 22037741, at *6)). In this case, "Class Counsel has extensive experience litigating securities class actions, and has submitted the

Joint Declaration attesting to Class Counsel's opinion that the settlement is fair, reasonable, and adequate." Pls.' Mot. Final Approval at 15–16; *see also* Jt. Decl. ¶¶ 5, 92. All five factors thus weigh in favor of approval and, accordingly, the Class Representatives' motion for final approval of the Proposed Settlement is granted.

### B. Approval of the Plan of Allocation

In addition to approving the Proposed Settlement, the Court must also evaluate the proposed Plan of Allocation to determine whether this plan is "fair, reasonable, and adequate." *In re Lorazepam*, 2003 WL 22037741, at *7 ("As with settlement agreements, courts consider whether distribution plans are fair, reasonable, and adequate."). "A plan of distribution is thus sufficient where . . . there is 'a rough correlation' between the settlement distribution and the relative amounts of damages recoverable by Class Members." *Id.* (quoting *In re Chicken Antitrust Litig.*, 669 F.2d 228, 240 (5th Cir. 1982)). Here, the Plan of Allocation "was designed to achieve an equitable and rational distribution of the Net Settlement Fund" and was developed by Class Counsel "in close consultation with the Class Representatives' damages expert." Jt. Decl. ¶ 94. Pursuant to the Plan of Allocation, the Net Settlement Fund will be distributed "among Authorized Claimants on a *pro rata* basis based on 'Recognized Loss' formulas tied to liability and damages." *Id.* ¶ 95. Each Authorized Claimant's "'Recognized Loss Amount' will be calculated by the Claims Administrator for each share of LSI common stock purchased or acquired during the Class Period," *id.* ¶ 96, which calculation will "depend upon several factors, including when the Authorized Claimant purchased shares during the Class Period and whether these shares were sold during the Class Period," *id.* No objections have been made to this proposed plan of allocation. *See* Pls.' Reply at 1. This Plan of Allocation thus provides a fair, reasonable, and adequate method of distributing the Settlement Fund.

### C. Attorneys' Fees and Litigation Expenses

Finally, Class Counsel requests "an award of attorneys' fees in the amount of 25% of the Settlement Amount," or $4.25 million; "payment of litigation expenses incurred during the course of the Action," totaling $790,897.81; and "reimbursement of the Class Representatives' expenses directly related to their representation of the Class," pursuant to the PSLRA, totaling $26,974.66. Pls.' Mot. Att'ys' Fees at 1–2. These requested fee amounts have been approved by the Class Representatives. *Id.* at 2; *see also* Caisse Decl. ¶¶ 7–8; NNERF Decl. ¶¶ 7–8.

#### 1. *Attorneys' Fees*

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h). Courts "have a duty to ensure that claims for attorneys' fees are reasonable," *Vista Healthplan*, 246 F.R.D. at 363 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)), and "for federal securities class actions, the PSLRA reiterates this mandate," *In re Fannie Mae*, 4 F. Supp. 3d at 110 (citing 15 U.S.C. § 78u-4(a)(6)).

"Courts have historically utilized two approaches in awarding reasonable attorneys' fees in class actions: the 'percentage of recovery' and 'lodestar' methods." *Osher*, 945 F. Supp. at 307 (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994)). "In this circuit, courts typically determine the appropriate amount of fees to be apportioned to attorneys in a 'common fund' case such as this one by approving a specified percentage of the fund that will be earmarked for attorneys' fees." *In re Black Farmers*, 856 F. Supp. 2d at 39 (citing *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1266, 1271 (D.C. Cir. 1993)); *see also Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). The D.C. Circuit "has not yet developed a formal list of factors to be considered in evaluating fee requests under the percentage-of-recovery method," *In re Fannie Mae*, 4 F. Supp. 3d at 110 (internal quotation marks omitted),

but other Judges "in this District have often considered the following seven factors," *id.*: (1) "the size of the fund created and the number of persons benefited"; (2) "the presence or absence of substantial objections by class members to the settlement terms or fees requested by counsel"; (3) "the skill and efficiency of the attorneys involved"; (4) "the complexity and duration of litigation"; (5) "the risk of nonpayment"; (6) "the time devoted to the case by plaintiffs' counsel"; and (7) "awards in similar cases," *id.* at 110–11 (internal quotation marks omitted).

Each of these factors weighs in favor of approving Class Counsel's request. First, regarding the size of the fund and the number of persons benefited, "[g]iven that more than 93,000 Settlement Notices have been mailed to potential Class Members, it is likely that thousands of investors will benefit from the Settlement." Pls.' Mot. Att'ys' Fees at 5; *see also* Mailing Aff. ¶ 7. The Settlement Fund amounts to $17 million, "significantly more than the $6 million median settlement amount in securities cases in 2017." Pls.' Mot. Att'ys' Fees at 5 (citing Stefan Boettrich and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2017 Full-Year Review* at 30 (NERA Jan. 2018)). Second, regarding objections, Class Counsel has not received any objections to the proposed fees and expenses. Pls.' Reply at 1. As to the third factor, the skill and efficiency of the attorneys, as discussed above, Class Counsel has extensive experience handling complex class actions such as this one, and Class Counsel's skill and efficiency was evident from the voluminous briefing on the parties' motion to dismiss, motion for class certification, and motion for partial summary judgment.

Regarding the fourth factor, the complexity and duration of the litigation, this matter was litigated for nearly four years before reaching a settlement. The earlier stages of this action involved determinations of "difficult legal and factual issues that required creativity and sophisticated analysis," Pls.' Mot. Att'ys' Fees at 8, including difficult questions regarding

scienter, loss causation, and reliance. *See Howard I*, 177 F. Supp. 3d at 311–17; *Howard II*, 322 F.R.D. at 119–33, 141–44; Jt. Decl. ¶¶ 8–42, 72–89. The fifth factor, the risk of nonpayment, likewise supports the fee request given that "Class Counsel undertook this Action on an entirely contingent fee basis, assuming a substantial risk that the litigation would yield no or potentially little recovery." Pls.' Mot. Att'ys' Fees at 10. The sixth factor—the time devoted to the case by Class Counsel—also supports the request. Class Counsel "collectively devoted more than 20,797 hours to the prosecution and resolution of the Action," *id.* at 12, "result[ing] in a combined 'lodestar' amount of $10,742,591.75 at Class Counsel's hourly rates—an amount that is significantly more than the $4,250,000 fee being requested," *id.* at 13. Moreover, Class Counsel is not seeking payment for work done preparing for or participating in the Settlement Hearing, responding to objections, supervising the claims administration process, or working with the Claims Administrator to distribute the Settlement Fund. *Id.* at 13.

Finally, regarding awards in similar cases, the $4.25 million fee award compares favorably to other actions. "In 'a majority of common fund class action[s],' attorneys' fee 'awards fall between twenty and thirty percent' of the fund." *In re Black Farmers*, 856 F. Supp. 2d at 39 (alteration in original) (quoting *Swedish Hosp.*, 1 F.3d at 1272). A 25 percent fee is consistent with fee awards in securities class actions and other common-fund cases in this Circuit. *See, e.g.*, *In re Harman Int'l Indus., Inc. Sec. Litig.*, No. 07-cv-1757 (RC), slip op. at 2 (D.D.C. Sept. 28, 2017) (25 percent of $28.2 million settlement); *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 204 (D.D.C. 2011) (25 percent of $12 million settlement); *In re Sunrise Sr. Living, Inc. Sec. Litig.*, No. 07-cv-102 (RBW), slip op. at 7–8 (D.D.C. June 26, 2009) (25 percent of a $13.5 million settlement); *In re Baan*, 288 F. Supp. 2d at 22 (28 percent of $32.5 million

settlement); *In re Lorazepam*, 2003 WL 22037741, at *8 (30 percent of $35 million settlement). Accordingly, Class Counsel's fee request is approved.[1]

### 2. *Litigation Expenses*

"In addition to being entitled to reasonable attorneys' fees, class counsel in common fund cases are also entitled to reasonable litigation expenses from that fund." *In re Fannie Mae*, 4 F. Supp. 3d at 113 (quoting *In re Lorazepam*, 2003 WL 22037741, at *10). Class Counsel seeks reimbursement for "reasonably incurred litigation expenses in the amount of $790,897.81, plus any accrued interest," as well as "reimbursement for the time that the Class Representatives dedicated to this Action, consistent with the PSLRA, in the aggregate amount of $26,974.66." Pls.' Mot. Att'ys' Fees at 2. Class Counsel has provided detailed explanations of the charges for which they seek reimbursement, including costs for travel, consulting experts, and conducting mediation, as well as for costs related to deposition transcripts and computerized research. *Id.* at 17–18; *see also generally* Jt. Decl., Ex. 4, Decl. of Jonathan Gardner (Labaton Sucharow), Ex. B, Labaton Sucharow Expense Report, ECF No. 122-4; Jt. Decl., Ex. 5, Decl. of Andrew D. Abramowitz (Spector Roseman), Ex. B, Spector Roseman Expense Report, ECF No. 122-5. These expenses "are the types of expenses that are necessarily incurred in complex commercial litigation and routinely charged to clients billed by the hour." Jt. Decl. ¶ 129. Accordingly, Class Counsel's request for expenses in the aggregate amount of $790,897.81 is approved.

---

[1] Class Counsel's fee request is also reasonable under the lodestar cross-check. "In some circuits, courts that use the percentage-of-the-fund method to calculate attorney's fees in common fund class actions will cross-check those results by calculating the attorney's fees using the more traditional 'lodestar' method, which looks to the time and expertise that the attorneys have invested in the case." *Ceccone*, 2016 WL 5107202, at *13. Class Counsel's aggregate total of more than 20,797 hours amounts to a lodestar of $10,742,591.75 at each firm's current hourly rates. Pls.' Mot. Att'ys' Fees at 15; Jt. Decl. ¶ 108. The requested fee of $4.25 million thus amounts to merely 40 percent of Class Counsel's combined lodestar, which further supports the reasonableness of the fee request. *See Cohen*, 522 F. Supp. 2d at 123 n.4 ("Class counsel is requesting attorneys' fees that are less than their lodestar without any multiplier, which serves as further evidence of the reasonableness of their attorneys' fee request.").

### 3. *Reimbursement of Class Representatives*

Finally, under the PSLRA, class representatives may also be awarded "reasonable costs and expenses (including lost wages) directly relating to the representation of the class." 15 U.S.C. § 78u-4(a)(4). The Class Representatives seek, in aggregate, "$26,974.66 as reimbursement for the time they spent actively participating in the Action and representing the Class," including by "assist[ing] with discovery efforts, produc[ing] documents, and ha[ving] a representative deposed." Pls.' Mot. Att'ys' Fees at 19. As the Class Representatives correctly state, "[c]ourts regularly approve reasonable payments to class representatives to compensate them for the time, effort, and expenses they devoted on behalf of a class." *Id.* (citing *In re Winstar Commc'ns Sec. Litig.*, No. 01-cv-3014, slip op. at 2 (S.D.N.Y. Nov. 13, 2013) (awarding $60,000 to lead plaintiffs); *In re Satyam Comput. Servs. Ltd. Sec. Litig.*, No. 09-md-2027, slip op. at 3–4 (S.D.N.Y. Sept. 13, 2011) (awarding $193,111 to lead plaintiffs); *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04-cv-8141, 2010 WL 5060697, at *3 (S.D.N.Y. Dec. 2, 2010) (awarding $30,000 to lead plaintiffs); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04-cv-8144, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009) (awarding $214,657 to lead plaintiffs)). Accordingly, Class Representatives' request for reimbursement in the amount of $26,974.66 is reasonable and is approved.

## IV. CONCLUSION

For the foregoing reasons, the Class Representatives' Unopposed Motion for Final Approval of Class Settlement and Class Counsel's Motion for an Award of Attorneys' Fees and Payment of Litigation Expenses are granted. Appropriate Orders accompany this Memorandum Opinion.

Date: October 5, 2018

_____
BERYL A. HOWELL
Chief Judge